FILED
2003 JUN 27 PM 4 31
BY ____ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | |
|---|---|
| THE ECOLOGY CENTER, INC., and THE LANDS COUNCIL<br><br>Plaintiffs,<br><br>vs.<br><br>BOB CASTENADA, in his official capacity as Forest Supervisor for the Kootenai National Forest; BRADLEY POWELL, Regional Forester of Region One of the U.S. Forest Service; and, UNITED STATES FOREST SERVICE, an agency of the U.S. Department of Agriculture.<br><br>Defendants. | CV 02-200-M-DWM<br><br>ORDER |

## I. Introduction

This civil action challenges several timber sales on the Kootenai National Forest (KNF) on National Environmental Policy Act (NEPA), National Forest Management Act (NFMA), and



EXHIBIT A

Administrative Procedure Act (APA) grounds. Several of the scheduled sales will log in old growth habitat. The Kootenai Forest Plan requires 10% of the forest to be old growth habitat in order to assure viability of old growth dependent species. These species include the fisher, the flammulated owl, the Canadian lynx, the wolverine, and the goshawk, among others. The following motions are before the Court: Plaintiffs' motion for preliminary injunction, Defendants' motion for consolidation of preliminary injunction with summary judgment, Plaintiffs' motion to strike Volume 103 of the Administrative Record, and Defendants' motions to strike the declarations of Catherine Schloeder and William Haskins.

## II. Arguments

### A. Plaintiffs' Assertions

Plaintiffs claim that the KNF has inventoried approximately 70% of the Forest's acres and comes up with approximately 8.9% old growth.[1] Pl.'s Prelim. Inj. Br., 8. The Forest Plan's requirement of 10% old growth is to "provid[e] habitat for those wildlife specifies dependent on old growth timber for their needs" and is to be spread throughout the forest and to represent different forest types. Pl.'s Prelim. Inj. Br., 9. Plaintiff argues that the KNF is not meeting that standard.

Second, the Forest Service has not assured the viability of the pileated woodpecker. Pl.'s Prelim. Inj. Br., 11 et seq.

---

[1]This conclusion is a matter of dispute, as discussed below.

Evaluating the impacts on a species must be a landscape analysis, not just on a piece-by-piece, project-by-project basis. Here, Plaintiffs rely on Idaho Sporting Congress v. Rittenhouse, (305 F.3d 957 (9th Cir. 2002)[2], for the idea that if the Forest Plan's requirement for old growth habitat is not being met, then the proxy on proxy system breaks down. A decision to log is therefore arbitrary and capricious. Pl.'s Prelim. Inj. Br., 13. Without the habitat, the Forest Service cannot assume it is assuring the viability of the species. Pl.'s Prelim. Inj. Br., 14. In addition, the pileated woodpecker itself is too adaptable to logged sites to function as the sole indicator species for old-growth dependent species. Pl.'s Prelim. Inj. Br., 16.

**B. Forest Service Response**

In response, the United States argues, first, that the Kootenai National Forest has fully complied with its Forest Plan in managing old growth. Def.'s Response Br., 3. Defendants claim that Plaintiffs misconstrue the plan, which only requires 8% of the forest to be old growth. Def.'s Response Br., 3. And, contrary to the Plaintiff's argument, "replacement" old growth can be used to reach the 10% level. In areas that were deficient in real old growth, stands that would be "old growth in the near future" could be included in meeting Forest Plan goals. Def.'s Response Br., 4.

---

[2]Plaintiffs inconveniently cite slip opinions of cases that have been published for several months.

Second, the KNF already has 10% effective old growth. The Forest Plan did not inventory wilderness or non-management areas for old growth, so the old growth in those units was never included in the figures of how much old growth is on the entire forest. Recently, new studies have measured some of these areas and conclude that there is more than 10% on the whole forest. Def.'s Response Br., 7. (These studies and the documentary support for these conclusions are included in Volume 103 of the AR, which is the volume at issue in The Ecology Center's Motion to Strike, addressed below.)

On the issue of viability of species, the Forest Service argues that it has provided for viable populations of old growth dependent species. Def.'s Response Br., 8. Actual population counts are not required by NFMA. The Forest Service distinguishes Idaho Sporting Congress v. Rittenhouse by arguing that no live old growth will be cut, and the cutting in old growth management units will "enhance the characteristics of the old growth." Def.'s Response Br., 10. The KNF comprehensively analyzed the impacts of the 2000 fires. Finally, unlike in Rittenhouse, the KNF has counted pileated woodpeckers, the designated representative old growth species.

The Forest Service relies on Inland Empire Public Lands Council v. United States Forest Service, 88 F.3d 754 (9th Cir. 1996), for the following methodology for indicator species requirements: 1). consider how much habitat the species needs,

2.) determine the impacts of the management activities on the species' habitat, and 3.) analyze whether post-management forests would provide sufficient habitat. The Forest Service claims that this is what they have done here with the pileated woodpecker. Def.'s Response Br., 11-12. They claim they need 8% old growth, they have more than 10%, and they are not going to do anything that would result in the "loss of old growth stands." Def.'s Response Br., 12.

Second, the Forest Service's choice of the pileated woodpecker as a management indicator species is well-supported. Def.'s Response Br., 13.

The Forest Service also discounts the reports of Plaintiffs' expert regarding old growth on the Kootenai, saying they "suffer a host of infirmities that did not withstand close scrutiny by Forest Service experts." Def.'s Response Br., 15. Therefore, Defendants claim, Dr. Schloeder's re-evaluation of Forest Service data need not be considered. The Forest Service is due deference regarding its methodology and analysis. Def.'s Response Br., 16. In addition, the Forest Service argues that her report was "rife" with errors.

Finally, the Forest Service argues that the public interest weighs against an injunction. The Intervenors represent specific sectors of the public injured by stopping the sales, and if harm had been so imminent to Plaintiffs, they would not have waited as long as they did after the sales were announced to file their

complaint.

**C. The Intervenor's Position**

Part A of the Intervenors' argument in opposition to the preliminary injunction is substantially the same as the Forest Service's argument. Part B discusses the equities in the preliminary injunction assessment. Intervenors argue that some of these EIS's go back to 1999, and Plaintiffs' delay in filing this suit undermines their claim of irreparable harm, especially since some of the sales are already almost complete. Damage in a sale such as this one, that involves a lot of salvage of dead trees, is not the same as in a timber sale that cuts green trees.

A second factor in weighing the equities is the survival of the Owens & Hurst Mill in Eureka. At oral argument on the preliminary injunction, James Hurst from the Owens & Hurst Mill testified to the financial hardship faced by his mill, particularly when sales on the KNF are held up. The Kootenai NF has sold only about half of the timber planned for in the revised sales estimates on the Forest Plan. If the sales at issue here are enjoined, that would reduce by about half the 2003 timber supply for the mill.

Intervenors argue that the public interest must be given separate consideration in this case, and the public interest here means the social and economic consequences in Lincoln and Sanders Counties. Maryann Roos, County Commissioner, testified at oral argument about economic conditions in those areas. Intervenors'

brief details the financial effects on the counties and their schools if they do not get the revenue from the forests and if people are laid off at the mill. Intervenors' Br., 16-18. Intervenors also argue that recreationalists have a safety interest in having hazardous burned trees removed so they can recreate in those areas. Finally, the environmental hazard will in fact increase if these trees are not removed, because insect and fire hazards will increase.

## Analysis

### A. Preliminary Injunction/Partial Summary Judgment

As a preliminary matter, the Forest Service has moved to consolidate the motion for preliminary injunction with a motion on the merits for summary judgment under Fed. R. Civ. P. 65(a)(2). Defendants argue that the briefing on the issues involved in the summary judgment motion on the issue involved here is complete and therefore the Court can rule on those issues as partial summary judgment. Brief, 2. In that case, the Court's rule of decision is not the balancing of harms involved in preliminary injunction analysis, but rather the standards used in a motion for summary judgment. Cronin v. Department of Agriculture, 919 F.2d 439, 445 (7th Cir. 1990).

In response, Plaintiffs claim that while they are not fundamentally opposed to consolidation, they are concerned about their right to appeal, since denial of a preliminary injunction is immediately appealable, while the granting or denial of

partial summary judgment is not. Plaintiffs ask that if the Court consolidates and rules in favor of the Forest Service on partial summary judgment, that it also deny the motion for a preliminary injunction, in order to preserve the Plaintiffs' right to immediate appeal.

The Forest Service has the better argument on this issue.

Defendants' Motion to Consolidate is hereby granted. Plaintiffs have since filed their own motion for summary judgment (not considered here), having already attempted to appeal to the Ninth Circuit this Court's delayed ruling on the preliminary injunction as a presumptive denial.[3] A fully-developed record is before the Court, and consolidation is appropriate.

**1. Standard for summary judgment**

Pursuant to Rule 56(c), Fed. R. Civ. P, summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment

---

[3]I find it ironic that the Plaintiffs in this case have tried to circumvent the normal judicial process. Out of nowhere, Plaintiffs filed "Request for 24-Hour Relief," a pleading with which I am not familiar. Then, Plaintiffs declared a presumed denial so they could seek an immediate appeal before I ruled. While it may present an intriguing idea to take the District Court out of the picture, that is not the law nor is it likely that the parties to a judicial proceeding will be allowed to make sua sponte rulings for the court. As I have tried to say in prior cases, the system will not work if one party or the other tries to circumvent the normal processes enacted by the Congress. See, Wilderness Society v. Rey, 180 F.Supp.2d 1141 (D.Mont. 2002).

as a matter of law." The Court may enter partial summary judgment under Fed. R. Civ. P. 56(d).

The moving party must establish that no genuine issue of material fact exists. A material fact is one which is relevant to an element of a claim or defense, and its materiality is determined by the substantive law governing the claim or defense. T.W. Elec. Serv. Inc. v. Pacific Elec. Contractors, 809 F.2d 626, 630 (9th Cir. 1987). Once a moving party meets its burden that no genuine issues of material fact exist, the burden shifts to the party opposing summary judgment to show specific material facts which remain at issue. Kaiser Cement Corp. v. Fischback & Moore, 793 F.2d 1100, 1103-1104 (9th Cir. 1986).

Allegations or denials in a pleading by a party opposing summary judgment do not create genuine issues for trial. There must be sufficient evidence supporting its claim of a factual dispute to require a judge or jury to resolve at trial. T.W. Elec., 809 F.2d at 630.

When reviewing agency action, this Court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error in judgment." Citizens to Preserve Overton park, Inc. v. Volpe, 401 U.S. 402, 416 (1971)(citations omitted.) Judicial review of agency decisions under the Administrative Procedure Act allows the Court to overrule agency action only when it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

5 U.S.C. § 706(2)(A).

2. **Eight Versus Ten Percent**

There is no question that the Forest Plan requires 10% minimum old growth habitat below 5500 feet on the Kootenai National Forest. 67 AR 1: KNF ROD, 9, 39. Defendants cite a number of documents in the Administrative Record that knock around eight and ten percent figures, including the Forest Plan's Final Environmental Impact Statement. Def.'s Br., 3. However, the Forest Plan itself is clear and unequivocal in stating that ten percent is the minimum. 67 AR 18: Forest Plan, II-22, III-54, III-77, VI-21. In fact, Defendants' own brief points out that there was some dispute at the time the Forest Plan was developed about what the figure should be, and that the resolution of that dispute was ten percent. Def.'s Br., 4. What it means is that the Forest Service set the standard and requirement of 10% old growth in this forest. There is further evidence in the record that the managers of the Forest knew the minimum to be 10%.[4] See, e.g., the 1988 letter of the Forest Supervisor to the District Rangers (97 AR 121).

The parties disagree about whether replacement old growth can be counted in the 10 percent figure, yet neither party can point to a specific place in the Forest Plan where the issue was

[4]A number of documents cited in the Brief of the Government do not say what the Government's counsel says they do or they are miscited. The problem with massaging the record is that it impacts, by advocacy, the credibility of the arguments made on behalf of the Forest Service, not by the Forest Service.

directly decided, or dealt with, by the agency. Def.'s Br. 5-7; Pl.'s Br., 9-10. The KNF adopted the Plan with an understanding that ten percent of the Forest was not currently in old growth condition. Therefore, the Plan contemplated using old growth from adjacent third order drainages to boost the percentage for deficient neighboring drainages. The Forest Plan FEIS states that designated old growth includes old growth and soon-to-be old growth. 67 AR 18: III-76. Therefore, the ten percent figure must be intended to include designated old growth that may include trees that are not yet technically old growth. However, this old growth must be designated as such, whether or not it possesses all of the characteristics included in the Forest Service's old growth definition.

The Forest Plan FEIS contemplated that undesignated old growth from non-managed areas such as roadless and wilderness would be included in the ten percent figure and needed to be counted in order to make sure that there was ten percent old growth evenly distributed across the forest. 67 AR 18: FEIS VI-21. With this determination in mind, the question to be answered is whether the forest meets the requirement the agency mandated in the Forest Plan.

**3. Does the Forest have 10% old growth habitat?**

Since the Forest Plan requires 10% old growth habitat, then the next question is whether the KNF has 10%, or more accurately, whether the Forest Service thought it did when these projects

were approved. Plaintiffs say the best guess now is 8.9%, based on the FY2001 Monitoring Report. Pl.'s Prelim. Inj. Br., 8. The United States cites "two recent studies" to conclude that there is more than 10% old growth on the KNF. Def.'s Br, 7. These studies inventoried old growth in wilderness and unroaded areas that were not previously inventoried. At oral argument, Plaintiffs' counsel resisted these additions, claiming that wilderness or unroaded does not necessarily automatically mean old growth habitat, and questioned how the Forest Service managed to finish so many thousands of acres of analysis in such a short time in the middle of winter. One of the studies is in Volume 103 of the record, with a chart dated February 2003, marked "Confidential: Attorney/Client Privilege." 103 AR 20. Another of these studies is a January 2003 paper. 98 AR 141. Plaintiffs' argument is that the Forest Service could not have made the decision to harvest based on *knowledge* that the Forest had 10% old growth, because they could not have known that any earlier than January or February of 2003. The decisions to do these projects were made before the FY2001 Monitoring Report cited by the Plaintiffs that claims 8.9%.

According to the Administrative Record, the areas in which the logging is to occur have 10% old growth habitat. 48 AR 14: Gold/Boulder/Sullivan EIS, III-85; 44 AR 446: Kelsey-Beaver EIS, III-128; 58 AR 283: Pinkham EIS III-78; 16 AR 1: White Pine EIS, III-86. The question, then, is whether if the Forest as a whole

does not have 10%, but the individual projects do, does that comply with the Forest Plan? Plaintiffs argue, based on Rittenhouse, that if the Forest is not in compliance with the Plan, then the projects cannot be. There is compelling Ninth Circuit authority to support this position.

> "[T]he site specific analyses of timber sales depend on the Forest Plan old growth viability standard to insure that the Forest Act's requirement of maintaining viable populations of native species, including old growth dependent species, is met. If the Forest Plan's standard is invalid, or is not being met, then the timber sales that depend upon it to comply with the Forest Act are not in accordance with law and must be set aside."

Rittenhouse, at 966.

**4. Viability of Species: The Pileated Woodpecker**

The Forest Service relies on Inland Empire Public Lands Council v. United States Forest Service, 88 F.3d 754 (9th Cir. 1996) and Idaho Sporting Congress v. Thomas, 137 F.3d 1146 (9th Cir. 1998) for the proposition that they do not need to do population monitoring to ensure the viability of the woodpeckers. Def.'s Resp. Br., 9-10. A proxy-on-proxy methodology suffices. That conclusion is questioned in Rittenhouse, supra, which says that proxy-on-proxy only works if the methodology upon which it is based is sound. In Rittenhouse, the court concluded that the Forest Service had done an inadequate job of verifying its old growth. Rittenhouse, at 970. In Inland Empire, the court thought the Forest Service had done an adequate job and therefore proxy-on-proxy was fine. Inland Empire, 88 F.3d at 761.

This case falls somewhere in between. There is less evidence that the Forest Service itself doubts its own analyses as it did in the situation in Rittenhouse. However, the KNF clearly did not know how much old growth habitat existed on the forest when it designed and approved these projects and it had only surveyed a portion of the forest.

The Forest Service's brief relies on the Landbird Monitoring Study, which has counted pileated woodpeckers back to 1994. Def.'s Resp. Br., 11. The KNF referred to this study in the EISs. See, e.g., the Gold/Boulder EIS, III-85; Pinkstone EIS, 26; A.R. 381. The FY 97 monitoring report concludes that pileated woodpeckers are doing fine on the forest. 26 AR 384. However, the record shows that monitoring of the pileateds has tapered off in recent years. The report of the Landbird Monitoring Study included in the Administrative Record is dated January, 2003, and therefore was not before the decision-maker when the decisions were being made. 93 AR 13. That document itself says there is not enough information to determine populations, which is the very thing that the Forest Service is supposed to be monitoring by law. 36 C.F.R. § 219.19(a)(2)&(6). The Forest Service's monitoring is legally insufficient if it intends to rely on the viability of the pileated woodpecker as an indicator of the status of a host of other old growth dependent species.

Plaintiffs also challenge the very use of the pileated woodpecker as a Management Indicator Species (Pl.'s Br., 15-17),

but that decision is entitled to deference, since it is based on valid, even if disputed, science. Plaintiffs have not demonstrated that the Forest Service's choice is wholly without any rational basis in science, and therefore I will not disrupt the KNF's strategy.

**5. The Issue of Dr. Catherine Schloeder**

The Ecology Center's scientist, Dr. Schloeder, submitted reports in the appeals process for the Pinkstone and Gold/Boulder/Sullivan Projects. Pl.'s Prelim. Inj. Br., 19; Cmplt., ¶ 55. In both of those areas, Dr. Schloeder concludes that the area does not have the requisite 10% old growth.

American Tunaboat Association v. Baldrige, 738 F.2d 1013 (9th Cir. 1984), holds that when evidence in the record detracts from that relied upon by the agency, the agency's decision may be found arbitrary and capricious. Tunaboat, at 1016 ("[E]ven though an agency decision may have been supported by substantial evidence, where other evidence in the record detracts from that relied upon by the agency we may properly find that the agency rule was arbitrary and capricious.") Plaintiffs frame the issue here not as a battle of the experts, which the Forest Service would win as an agency entitled to scientific deference, but as a question of whether the Forest Service entirely ignored credible contradictory scientific evidence.

The Tunaboat decision is not as strong as Plaintiffs allege. Though Dr. Schloeder's reports dispute the findings of the Forest

Service, I am in no position to evaluate the scientific merits of the competing conclusions. Dr. Schloeder may be right; the Forest Service may be right. That is a dispute to be resolved by scientists. The record does not demonstrate such a lack of corroboration of the Forest Service's position that this Court must step in, under the reasoning of Tunaboat. The agency is entitled to deference on this question.

**7. Conclusion on Partial Summary Judgment**

The Forest Service is out of compliance with the Forest Plan in the amount of old growth across the forest and in monitoring requirements for pileated woodpeckers. While the forest may very well have the required ten percent now, there is no evidence in the Administrative Record to show that the agency knew this at the time these decisions were made.[5] As an independent matter, not having ten percent now may or may not invalidate a timber sale, since the project areas appear to have ten percent in each of them, and the Forest Service asserts that old growth will not be logged. This Order need not reach that issue, however.

The proxy-on-proxy method of protecting species works only when the proxy of habitat is secure. It is not clear that there is enough old growth habitat on the Kootenai National Forest, nor is it clear that the Forest Service knows enough about how many birds they have to be sure that the viability of old growth dependent species is assured. The Forest Service's decision to

---

[5] See discussion of the motion to strike Volume 103 below.

log in old growth when it is not in compliance, or it does not know if it is complying with its Forest Plan is contrary to law under NEPA. Further, though proxy-on-proxy methodology is appropriate for ensuring species viability under NFMA, the Forest Service does not meet obligations imposed by Congress to ensure viability when it does not sufficiently monitor population and trends for its indicator species and fails to ensure that the species' has sufficient habitat, according to the Forest Plan.

**B. Motions to Strike**

District court review of agency action is generally limited to a review of the record before that decision-maker at the time the decision was made. Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971). A decision to exclude extra-record evidence is reviewed for an abuse of discretion. Southwest Center for Biological Diversity v. U.S. Forest Service, 100 F.3d 1443, 1447 (9th Cir. 1996). Such extra-record evidence is permissible in four circumstances: 1.) if necessary to determine whether the agency has considered all relevant factors and has explained its decision, 2.) when the agency has relied on documents not in the record, 3.) when supplementing the record is necessary to explain technical or complex matters, and 4.) when Plaintiffs make a showing of agency bad faith. Northcoast Environmental Center et al. v. Glickman, 136 F.3d 660, 665 (9th Cir. 1998)(citing Southwest Center, 100 F.3d at 1450).

**1. Declaration of Catherine Schloeder**

Federal Defendants move to strike the declaration of Dr. Catherine Schloeder, filed by Plaintiffs following oral argument. Defendants argue, first, that Dr. Schloeder's declaration violates L.R. 7.1, which allows only for motion, response, and reply briefs. Further briefing is permitted only by leave of the court, which the Plaintiffs did not request. The Declaration, Defendants argue, improperly furthers Plaintiffs' arguments in response to Defendants' Response Brief.

Second, Defendants argue that this Court is "not equipped or obligated to resolve experts disputes in NEPA/NFMA cases." Def.'s Br., 3. Plaintiffs' submission of Dr. Schloeder's declaration, Defendants argue, is an attempt to engage Defendants and the Court in a battle of experts over the scientific methodology for old growth timber surveying. Def.'s Br., 4. Generally, where scientific matters are involved, the agency can depend on its own experts. Marsh v. Oregon Nat. Resources Council, 490 U.S. 360, 377 (1989). In conclusion, Defendants ask for both the Declaration and Dr. Schloeder's Reports appended to Plaintiffs' motion for preliminary injunction to be stricken.

In response, Plaintiffs argue that Schloeder's declaration is intended to bolster the credibility of her studies and her legitimacy as a scientist--not to create a battle of experts, but rather just to demonstrate that her reports were expert and therefore ought to have been considered. Pl.'s Resp., 3.

In reply, Defendants claim that the Forest Service was free

to ignore Schloeder's reports, and that the reports were not submitted to the Forest Service until Plaintiffs' appeals of the Pinkham and Gold, Boulder, Sullivan decisions. Reply Brief, 2.

In Inland Empire, supra, the Forest Service wanted to strike declarations, but the Ninth Circuit allowed the extra information in to consider whether the Forest Service "overlooked factors relevant to a proper population viability analysis[.]" Inland Empire, 88 F.3d 754, 760, FN 5 (9th Cir. 1996). This declaration contributes to the Court's understanding of the technical issues at hand related to old growth surveying. It assists the Court in understanding Plaintiffs' argument and the factors involved in the Forest Service's analysis. Therefore, it will not be stricken.

**2. Declaration of William Haskins**

For similar reasons, the Federal Defendants move to strike the Declaration of William Haskins, which was submitted on April 11, 2003. Plaintiffs did not respond to this motion.

The substance of the declaration is that the management units described by the KNF as old growth appear, after Haskins' computer evaluation, to include stands that have been logged. This declaration will be stricken. Plaintiffs' lack of response can be interpreted according to Local Rule 7.1(i) as an admission that the motion is well taken.

**3. Volume 103 of the Administrative Record**

Plaintiffs move to strike Volume 103 of the Administrative

Record, which includes the February, 2003, report created after the Record of Decision that claims that the KNF has greater than 10 percent old growth.[6] 103 AR 20. Plaintiffs rely on Idaho Sporting Congress v. Alexander, 222 F.3d 562 (9th Cir. 2000), in which the Ninth Circuit disallowed the Forest Service's attempt to use a Supplemental Information Report to add information to the record after the decision had been made. Cases cited by Plaintiffs hold that if information is new and accurate pertaining to the Forest Service's decision, a Supplemental EIS must be prepared, depending on the circumstances.

Defendants respond with four points. First, Defendants object generally, reiterating some of their arguments from their Response to the Motion for Preliminary Injunction, claiming that the Forest Plan does not call for 10% old growth, that these projects will not affect old growth, and that there was no nefarious reason for the Forest Service providing this report at such a late date.

Second, Defendants argue that Volume 103 is a proper component of the record in this case, despite the fact that it represents documents not before the decision maker. Defendants claim that Plaintiffs misconstrue the prohibition against post-

---

[6] Several of the documents in Volume 103 were created after this litigation commenced, in early 2003. Some of these documents are helpful to the Court's understanding of the issues and would not necessarily merit being stricken. However, document 20 precludes consideration of the information in Vol. 103.

hoc rationalization; post-hoc additional information is permissible, if it further explains the deciding agency's reasons for decision. Camp v. Pitts, 411 U.S. 138, 142-43 (1973). Defendants cite Presidio Golf Club v. National Park Service, 155 F.3d 1153, 1165 (9th Cir. 1998) for upholding a district court's decision to consider a litigation affidavit explaining, post-hoc, the Park Service's analysis. The cases cited by Defendants here are all distinguishable--elaborating or clarifying is very different from reaching a new conclusion about the critical ten percent figure.

Defendants then proceed through the four justifications allowed in the Ninth Circuit for extra-record documents and claim that admission is warranted under these factors. Def's Br., 6. The Forest Service was just using this late-date survey to ground-truth its methodology. "The KNF, which is experienced in the forest and knows Plaintiffs' skepticism to be misplaced, thus set about demonstrating that the methodology in the KNF Forest Plan adequately accounts for 10% old growth." Def.'s Br., 6. Defendants rely on the second Ninth Circuit exception to argue that the additional information was required to explain complex subject matter. Def.'s Br., 6. Third, Defendants claim that Plaintiffs have accused the Forest Service of bad faith and colluding with the timber industry. Allegations of bad faith permit the district court to consider evidence beyond the administrative record. Def.'s Br., 7.

Next, Defendants argue that Plaintiffs' analogy to cases involving SIRs has no precedential value, because there was no SIR here. Defendants argue that a SIR is only appropriate for new information, not for information that the Forest Service "knew or should have known at the time it prepared the original EA." (Quoting District Court Order in Friends of the Clearwater v. McAllister, Def.'s Br., 8.) Defendants' argument is that at the time of the EIS, the Forest Service knew the projects would not decrease the 10% old growth on any sites, and therefore, the new data "merely represent a different means of confirming this conclusion." Brief, 8-9. "Therefore, Volume 103 is not "new information," is not amenable to analysis via SIR, and Plaintiffs' cited precedents have no relevance." Brief, 9.

Defendants' final argument is that the information included in Volume 103 is necessary for the Court to weigh the supposed irreparable harm alleged by Plaintiffs in the preliminary injunction analysis. Defendants argue that the "actual status of old growth on the KNF is critically important," in order to determine if there really is any harm. Brief, 10. Because a preliminary injunction issues upon success on the merits AND irreparable harm, Volume 103 is admissible to negate Plaintiffs' alleged harm. Defendants also rely on San Francisco BayKeeper v. Whitman, 297 F.3d 877 (9th Cir. 2002), for the proposition that a record can be supplemented if the issue is the Government's failure to act. (This case is inapt, because the court there

concluded that there was no endpoint to determine the date by which the Forest Service should have acted. Here, there is definitely an endpoint by which it should have acted--in order to avoid being arbitrary and capricious, the Forest Service should have known and considered the information by the time of decision.)

Volume 103 is stricken. First, since the motion for preliminary injunction has been consolidated with a motion for summary judgment, the Forest Service's final justification, the irreparable harm prong, is irrelevant. Second, none of the factors for admitting extra evidence applies. The Forest Service may be ground-truthing its methodology, but at the time of the decision, the Forest Service still did not know the answer about the amount of old growth in the forest. Whether it turns out that the Forest Service is factually right is a matter for the agency to reconsider in light of its full inventory of the forest and the opportunity for public comment. NEPA is a procedural statute, not focused only on having a result despite following an incorrect procedure. The Congress mandated a process that must be followed correctly for viable agency decision making.

Next, the disputed document in Volume 103, the February 2003 analysis, does not clarify complicated technical matters, but rather provides new evidence to rationalize the Forest Service's earlier decision. Further, the Plaintiffs raise a troubling point--if the conclusion of the latest survey had been other than

what it was, this "confidential attorney work product" may never have seen the light of day. Documents that underlie a government agency's decision-making must be available for public review and comment. Finally, though Plaintiffs' rhetoric occasionally gets carried away, there are *no* allegations in the Complaint of in the pleadings that support for any contention of bad faith on the part of the Forest Service.[7]

**Conclusion**

For the foregoing reasons, it is therefore HEREBY ORDERED that:

1. Defendants' Motion to Consolidate is GRANTED;

2. Partial summary judgment is DENIED to Defendants and Intervenors and GRANTED to Plaintiffs on the grounds explained above, as to Plaintiffs' Requests for Relief A and B in Plaintiffs' Complaint. The Forest Service is enjoined from further timber sales only pending its resolution of these matters on remand, as directed below;

3. Defendants' motion to strike the Declaration of Catherine Schloeder is DENIED;

4. Plaintiffs' motion to strike Volume 103 of the Administrative Record is GRANTED;

5. Defendants' motion to strike the Declaration of William

---

[7]The Forest Service's arguments regarding the inapplicability of SIRs cases are beside the point. This Court's analysis is guided by the Ninth Circuit's four factor test, regardless of the supposed form of the late information.

Haskins is GRANTED.

The Clerk is directed to enter Judgment in favor of the Plaintiffs and against the Defendant and Intervenors on the issue decided herein. Rule 54(b) F.R.Civ.P.

The issue decided here is remanded immediately to the Forest Service for consideration in light of the reasoning and law set forth above.

A briefing schedule and trial date will be set forth by separate order on the remaining issues in this case.

The Clerk is directed to notify the parties of the entry of this Order.

Dated this 27th day of June, 2003.

16:30p.m.

DONALD W. MOLLOY, CHIEF JUDGE
UNITED STATES DISTRICT COURT