**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**No. 05-781 C**
**Judge Lawrence M. Baskir**

**HUBERT BASFORD,**
**ROXANNE BASFORD, AND**
**BEAR MOUNTAIN CONTRACTING**

**v.**

**THE UNITED STATES**

# FIRST AMENDED COMPLAINT

Come now the Plaintiffs, Hubert Basford, Roxanne Basford, and Bear Mountain Contracting, through their counsel of record, Sullivan, Tabaracci & Rhoades, P.C., and complain against the Defendant as follows:

1. Plaintiffs Hubert Basford and Roxanne Basford are individuals living in Laclede, Idaho. Basfords own and operate Plaintiff Bear Mountain Contracting. Jointly, the Plaintiffs are a "contractor".

2. Defendant is the United States, on behalf of the U.S. Department of Agriculture, on behalf of the U.S. Forest Service, Kootenai National Forest. The Kootenai National Forest is located in the Northwestern corner of Montana and the Northeastern corner of Idaho on the Canadian border.

3. This is a claim against the United States founded upon an express or implied contract with the United States for liquidated and unliquidated damages.

4. Plaintiffs have submitted their claims to the contracting officer in writing for a decision and the contracting office has issued his final decision on those claims.

5. This Court has jurisdiction of this matter pursuant to 28 U.S.C.A. § 1346 and 41 U.S.C.A. §609.

6. On or about June 27, 2003, in the U.S. District Court for the District of Montana, Missoula Division, U.S. District Judge Donald W. Molloy issued an injunction on all logging in the Kootenai National Forest in The Ecology Center v. Castenada, case no. CV-02-200-M-DWM. Pl.'s Ex. A, Molloy Order, June 27, 2003.

7. Plaintiffs, Idaho residents who were not involved in The Ecology Center case, were unaware of Judge Molloy's injunction. Defendant was fully aware of the injunction and its prohibitions on logging in the Kootenai National Forest.

8. On or about August 19, 2003, only 39 days after Judge Molloy's injunction, Defendant issued a Request for Quotation ("RFQ"), Number RFQ 14-03-085 for "Rexford Ranger District Fuel Reduction Thinning, Rexford Ranger District" ("the Contract"), which project was located within the boundaries of the Kootenai National Forest. See, Pl.'s Ex. B, Request for Proposal, Aug. 19, 2003.

9. The Contract, designated by the Defendant as a "service contract", provided for two separate "Item Numbers" or areas of work covering 139 acres in two project areas. Project 1 consisted of 1 item, "Black Butte Fuel Reduction" (98 acres). Project 2 consisted of one item, "Othorp Lake Fuel Reduction" (41 acres). Pl.'s Ex. B., pp. 2, 13.

10. The RFQ described the Second Item number, "Othorp Lake" as "[s]elective tree thinning, slashing, slash piling in unit, hand piling on steep slopes." Pl.'s Ex. B, p. 2.

11. The RFQ described the first Item, "Black Butte" as "[s]elective tree thinning, removal of merchantable material, slashing, slash piling in unit". The Contract required, among other things, "commercial thinning", "slashing" and excavator piling. Pl.'s Ex. B, pp. 2, 17, 29, 31.

12. Contract provisions for the "removal of merchantable material", "harvesting", and "commercial thinning", all indicate the Defendant's inclusion of logging activity in the Plaintiffs' service contract.

13. The Contract terms soliciting logging activity in the Kootenai National Forest were in violation of Judge Molloy's Injunction.

14. Although the Contract was issued as a "service contract", the Contract terms entitled the contractor to retain merchantable timber and salvage material on the Black Butte Unit. Salvaging was not allowed on the Othorp Lake Unit of the Contract. Pl.'s Ex. B, p. 15.

15. The Contract terms soliciting logging activity, and the provision of merchantable timber and salvage material to the Contractor, as consideration for work on a service contract, was in violation of the Defendant's own practices and protocol.

16. Plaintiffs submitted their bid on the Contract to perform the indicated work on Item 1, "Black Butte" for the amount of $22,050.00 and for Item 2, "Othorp Lake" for the amount of $10,975.00, for a total bid price of $33,025.00. Pl.'s Ex. B, p. 2.

17. The merchantable timber and salvage rights provisions of the Contract allowed the Plaintiff to bid the hundreds of hours of required labor, equipment use, and related costs and expenses for a price of only $33,025.00, because the Contract was intentionally structured to allow the contractor to supplement its income from the Contract bid price with income from the sale of the merchantable timber and salvage material obtained from the Contract.

18. In calculating their bid amount of $33,025.00, Plaintiffs anticipated receiving somewhere in the neighborhood of $125,000.00 in additional revenue from the sale of the merchantable timber and salvage material, less their expenses.

19. On or about October 14, 2003, Defendant, through its representative and contracting officer Jeanne Robertson, accepted Plaintiff's bid amount of $22,050.00 for Item 1 (Black Butte) and $10,975.00 for Item 2 (Othorp Lake), for a total bid of $33,025.00, and issued Purchase Order, Number 43-03J1-4-0008 awarding Plaintiffs the Contract. Pl.'s Ex. C, letter of Oct. 13, 2003, from Jeanne M. Robertson, USFS Contracting Officer, to Bear Mt. Contracting.

20. On October 22, 2003, Plaintiffs and the Defendant, through its representatives and contracting officers, Sheila Braum and Dale Reckley, attended a pre-work meeting to discuss the terms of the Contract.

21. At the pre-work meeting, the parties agreed to calculate and make payments to Plaintiffs on a "per acre" basis as work was completed.

22. At the pre-work meeting, Defendant's agent, Sheila Braum told Plaintiffs that although they could post "trucks" signs warning drivers of the Plaintiffs' logging trucks on the area roads, they were not to post any "logging trucks" signs on the roads near the Contract site.

23. On or about October 22, 2003, Plaintiffs began performance on the Othorp Lake portion of the Contract.

24. Between January 1, 2004 and March 3, 2004, Plaintiffs slashed approximately 44 acres of the total 98 acres of timber on the Black Butte area.

25. Plaintiff had hauled a portion of that slashed timber and placed it in a log deck

for transfer to the local mill. Much of the slashed timber remained on the ground where it was cut and unpiled.

26. On or about March 3, 2004, with no explanation, Defendant ordered Plaintiffs to suspend all work on the contract for an indefinite period. Pl.'s Ex. D, letter of March 3, 2004, from Dale R. Reckley for Jeanne M. Robertson, USFS Contracting Officer to Bear Mountain Contracting.

27. On or about March 3, 2004, Plaintiff stopped work on the Black Butte portion of the Contract.

28. Losing money because of the delay, and unsure of its reason or duration, Plaintiff asked Defendant why it had suspended work on the Contract, and when Plaintiff would be permitted to re-start performance.

29. On March 6, 2004, contracting officer Dale Reckley modified the terms of Item 2, the Black Butte portion of the Contract and ordered Plaintiff to re-start work on that portion of the Contract (hereafter "March 6 Modifications"). Pl.'s Ex. E, letter of March 6, 2004, from Dale R. Reckley for Jeanne M. Robertson, USFS Contracting officer, to Bear Mountain Contracting.

30. The March 6 Modifications: 1) prohibited removal of any timber from the Black Butte area of the Contract; 2) required Plaintiffs to pile 44 acres of slashed timber; and 3) required Plaintiffs to submit in writing a new price for Black Butte to include separate sub-item prices for hand piling and excavator piling existing slash. The March 6 modifications did not change Line Item 2, the Othorp Lake portion of the Contract. Pl.'s Ex. E.

31. Although Plaintiffs had completed work on 44 of the 98 acres of the Black Butte portion of the Contract, the March 6 Modifications prevented Plaintiffs from removing any of the saw logs which had been stacked "in deck" for transmittal to the mill. As a result, the March 6 modifications prevented Plaintiffs from receiving the majority of their compensation for their work on the 44 acres.

32. The March 6 Modifications materially increased Plaintiffs' work requirement by requiring hand-piling of material originally bid to be excavator-piled, while materially decreasing Plaintiffs' compensation for that work.

33. On March 13, 2004, Plaintiffs explained to the contracting officer that after his modifications, they required payment for 1) all the salvage and timber to which they had previously been entitled in the Black Butte Area; 2) all their expenses incurred because of the suspension; and 3) the difference between the original

Contract compensation terms and the modified Contract compensation terms.

34. In response to Plaintiff's request for compensation for the March 6 Modifications, on April 6, 2004, contracting officer Dale Reckley again modified the Contract, this time by terminating Item 2, the Black Butte portion, in its entirety (hereafter the "April 6 Modification"). Pl.'s Ex. F, letter of April 6, 2004, from USFS Contracting Officer Dale R. Reckley to Bear Mt. Contracting.

35. Despite removal of the majority of the compensation from the Contract, the contracting officer directed Plaintiffs to continue work on Item 2, Othorp Lake, per the original contract specifications. Pl.'s Ex. F.

36. The contracting officer presented Plaintiffs with a new contract containing the April 6 Modification. Plaintiffs did not agree to those modifications, and did not execute the modified contract.

37. Explaining to Defendant that subsequent to its April 6 Modification, it was no longer feasible for Plaintiffs to complete the Contract, as modified, Plaintiffs requested that Defendant pay them $24,525.00 which remained unpaid on the Contract, plus payment for the value of all the merchantable timber and salvage rights on the 98 acres of the Black Butte portion of the Contract due to Defendant's error in issuing the Contract in violation of Judge Molloy's injunction.

38. Defendant, through contracting officer Reckley, offered to review Plaintiff's information regarding the value of the salvage material at the site, and requested Plaintiff's substantiation of their claims of the value of the timber and salvage on the Black Butte portion of the Contract.

39. On or about May 5, 2004, the Plaintiffs indicated to Defendant that the value of the salvage on the Black Butte portion of the Contract was approximately $71,874.00 for saw logs, $14,112.00 for pulp. Plaintiffs indicated an amount for Item 1, Othorp Lake, was $250.00 per acre for Excavator Piling, $600.00 per acre for hand piling.

40. On May 6, 2004, Forest Supervisor Bob Castaneda, the named Plaintiff in the Ecology Center case, acknowledged to Plaintiffs that the Forest Service had "made a mistake by including larger trees . . . and pulp in your salvage rights." Castaneda informed Plaintiffs that he had "directed Mr. Reckley to work with [Plaintiffs] to establish fair compensation for the value of the salvage material at Black Butte." Pl.'s Ex. G, letter of May 6, 2004, from USFS Forest Supervisor Bob Castaneda to Bear Mt. Contracting.

41. Castaneda asked Plaintiffs to provide "some substantiation of the value [of the Black Butte merchantable timber and salvage] as you see it. . . . in the form of logical estimates based on commonly accepted forestry estimating practices or copies of contracts for the purchase of salvage material."Pl.'s Ex. G.

42. The same day as the Castenada letter, Regional Forester Abigail R. Kimbell confirmed that "it was the opinion of [U.S. Forest Service] legal counsel that the [Molloy] injunction did apply . . . to the work associated with [Plaintiffs'] contract [and] no timber could be removed from the Black Butte unit." "It is imperative that we comply with the injunction . . . ." Pl.'s Ex. H, letter of May 6, 2004, from Regional Forester Abigail R. Kimbell to Bear Mountain Contracting.

43. Kimbell indicated that the Forest Service had "calculated the estimated market value of the downed timber based on cruised volume, and Contracting Officer Dale Reckley has agreed to make payment to you in that amount as compensation for your efforts." Pl.'s Ex. H (emphasis added).

44. For the entirety of their completed work on the Contract plus the value of the Plaintiffs' entitlement to merchantable timber and other material on the Contract, Defendant offered to pay Plaintiffs a total amount of $787.08.

45. On our about May 14, 2004, Plaintiffs requested Defendant issue them an extension of three (3) months from July 31, 2004 to October 31, 2004, to complete the work as requested.

46. On or about May 18, 2004, the Defendant, through its agent and contracting officer Reckley, denied Plaintiff's request for additional time to complete the Contract.

47. The contracting officer did not adjust the Contract price despite the work suspension, the March 6 Modifications and the April 6 Modification which made material changes to the amount and character of the work, and material decreases in Plaintiffs' compensation.

48. On or about May 21, 2004 Plaintiffs requested additional compensation from Forest Supervisor Bob Castenada due to contracting officer Reckley's refusal to adjust the Contract price in relation to the increased work requirement and cost for hand-piling the slash material.

49. On or about June 3, 2004, the Defendant, through Dale J. Fabian, USFS Director, Acquisition Management, notified the Plaintiffs that the Forest Service had "calculated the estimated market value of the downed timber based on cruised

volume, and Contracting Officer Dale Reckley has agreed to make payment to [them] in that amount for the efforts that [they] have made." Fabian further indicated that if Plaintiffs had "documentation to substantiate a different amount", he was "sure" Mr. Reckley would be willing to discuss this further.

50. On or about June 8, 2004, Regional Forester Abigail R. Kimbell echoed Forest Supervisor Castaneda's and Dale J. Fabian's earlier representations regarding contracting officer Reckley's anticipated cooperation with Plaintiffs: "[o]ur procurement staff has been in contact with Mr. Reckley and he is anxious to negotiate the necessary changes with you to allow the contract to be completed successfully."

51. In a letter dated June 8, 2004, contracting officer Reckley requested Plaintiffs to "fill in the values for work to be completed" on the Black Butte portion of the Contract. Pl.'s Ex. I, June 8, 2004, letter from USFS Contracting Officer Dale R. Reckley to Bear Mountain Contracting, and response by Hubert Basford.

52. On or about June 29, 2004, Plaintiffs provided Reckley with the figure of $71,874.00 in work to be completed by "filling in the blanks" on Reckley's June 8, 2004, letter. Pl.'s Ex. I.

53. After receipt of Plaintiffs' figure of $71,874.00 for "work to be completed" on the Black Butte portion of the Contract contracting officer Reckley refused to make any adjustment in the Contract price, informing Plaintiffs the work was "bid at a price and must be done at that price".

54. Despite the representations of: 1) Forest Supervisor Castaneda's "direction" to contracting officer Reckley to "work with Plaintiffs to establish fair compensation for the value of the salvage material at Black Butte" (Pl.'s Ex. G) and; 2) Regional Forester Kimbell and Director of Acquisition Management Fabian that contracting officer Reckley would pay Plaintiffs "fair market value of the downed timber based on cruised volume" (Pl.'s Ex. H), to date, Defendant has never compensated Plaintiffs for the fair market value of the merchantable timber and salvage remaining at the site. (See Also, Pl.'s Ex. N, contracting officer's Final Decision on salvage value, September 24, 2004.)

55. Upon discovery of the contracting officer's apparent revocation of his earlier assurances of Plaintiffs' payment, the Plaintiffs requested Forest Supervisor Bob Castenada to provide them with a new Contracting Officer to administer the Contract.

56. On or about July 26, 2004 contracting officer Reckley defaulted Plaintiff on the

Contract in its entirety for "failure to perform as requested". Pl.'s Ex. J, Notice of Termination dated July 26, 2004, from USFS Contracting Officer Dale R. Reckley to Bear Mountain Contracting.

57. On or about August 20, 2004, Judge Molloy lifted his injunction on logging in the Kootenai National Forest.

58. Without addressing his pending July 26, 2004 request for Plaintiffs' Settlement Proposal, on August 30, 2004, contracting officer Reckley offered to reinstate the Plaintiffs' Contract "under the original terms and conditions" so long as they do so by the next day, August 31, 2004. Pl.'s Ex. K, letter of August 30, 2004, from USFS Contracting Officer Dale R. Reckley to Bear Mountain Contracting.

59. Plaintiffs submitted their Settlement Proposal to contracting officer Reckley on August 31, 2004. Pl.'s Ex. L, Bear Mountain Contracting Settlement Proposal, August 31, 2004.

60. Plaintiff's Settlement Proposal requested $51,832.00 for completed work and the value of merchantable materials to which they would have been entitled on the completed portion of the Black Butte Item of the Contract, plus reasonable associated costs to prepare the proposal. This figure did not include amounts to which Plaintiff would have been entitled had it been permitted to work through completion of the Contract. Pl.'s Ex. L, pp. 3-5.

61. Plaintiff's Settlement Proposal further indicated that any resolution must include Defendant's recission of Plaintiffs' default on the Contract, since a contract default would jeopardize Plaintiffs' ability to perform work on other Forest Service contracts in the future. Pl.'s Ex. L, p. 5.

62. Plaintiffs' Settlement Proposal was supported by "logical estimates based on commonly accepted forestry estimating practices" and "copies of contracts for the purchase of salvage material", including the analysis and opinion of Dan Pittman, CF/ACF, a forestry and natural resources consultant. Mr. Pittman's analysis and opinion regarding the Black Butte merchantable and salvage value was attached to Plaintiffs' Proposal. See, Pl.'s Ex. L, pp. 6-8.

63. At no time after receipt of Plaintiffs' Settlement Proposal did the Defendant ever request copies of supporting documentation such as copies of contracts for the purchase of salvage material specifically cited in Plaintiffs' Settlement Proposal, and relied upon by their attorneys and their forestry consultant, although the same was readily available for Defendant's review.

64. Contracting officer Reckley refused to negotiate with Plaintiffs with regard to the terms of their Proposal.

65. On September 9, 2004, contracting officer Reckley again offered to reinstate the terms of the original contract, despite his earlier representation that Plaintiffs would only be allowed to reinstate the Contract if they did so by August 31, 2004. Pl.'s Ex. M, Letter dated September 9, 2004, from USFS Contracting Officer Reckley to Bear Mountain Contracting.

66. Reckley's offer confirmed there was still a possibility the contract could be "shut down" if the parties in the Ecology Center case appealed Judge Molloy's ruling. Pl.'s Ex. M.

67. Reckley's offer also suggested Plaintiffs convert their Settlement Proposal to a claim under the Disputes clause of the Contract. Pl.'s Ex. M.

68. Approximately two weeks after contracting officer Reckley's response to Plaintiffs' Settlement Proposal, he issued his Final Decision on Salvage Value, Contract No. 43-03J1-4-008 finding that the Plaintiffs were entitled to $2,828.77, to be held in an account pending determination of excess costs associated with reprocurement of services. Pl.'s Ex. N, letter dated September 24, 2004, from USFS Contracting Officer Dale Reckley to Bear Mountain Contracting.

69. Reckley has never released those funds to Plaintiffs, nor informed Plaintiffs of the status of those funds.

70. Plaintiffs now appeal contracting officer Reckley's 1) July 26, 2004 termination of the Contract for default; 2) September 24, 2004, determination regarding the value of the salvage material on the Black Butte portion of the Contract, and 3) the contracting officer's decisions leading up to those final determinations.

## FIRST CLAIM FOR RELIEF
## **(Claim for relief from an illegal contract)**

71. Plaintiffs reallege and incorporate by reference the allegations of the foregoing paragraphs in their entirety.

72. Based on the facts alleged herein, the Contract, or a portion thereof, was illegal from its inception for its issuance in violation of Judge Molloy's injunction.

73. This Court has the power to grant relief to Plaintiffs when the express contract is illegal.

74. Plaintiffs have suffered damage as a result of the Defendant's issuance of the illegal contract, in an amount to be determined.

75. The illegality is not palpable, and Plaintiffs are entitled to recover under the express contract; or if palpable, Plaintiffs are entitled to recover under an implied-in-fact contract.

SECOND CLAIM FOR RELIEF
**(Breach of contract - termination and default)**

76. Plaintiffs reallege and incorporate by reference the allegations of the foregoing paragraphs in their entirety.

77. The contracting officer departed from termination procedures provided by applicable procurement regulations.

78. The contracting officer's termination was in bad faith or was a clear abuse of discretion.

79. Plaintiffs were injured by the contracting officer's termination of the Contract.

80. Defendant's termination and/or default of Plaintiff's Contract constitutes a breach of contract.

81. Plaintiffs are entitled to damages resulting from Defendant's breach, in an amount and character to be determined, including a reversal of the contracting officer's finding of Plaintiffs' default on the Contract.

ALTERNATIVE THIRD CLAIM FOR RELIEF
**(Breach of Contract – cardinal change – elimination of salvage rights)**

82. Plaintiffs reallege and incorporate by reference the allegations of the foregoing paragraphs in their entirety.

83. Defendant modified the Contract by eliminating Plaintiffs' salvage rights on the Black Butte portion of the Contract.

84. Defendant's modification was a "Cardinal Change" of the Contract terms.

85. Defendant's cardinal change was not redressible under the Contract, and thus renders the government in breach of the contract.

86. Defendant's contracting officer, Dale Reckley, failed to act conscientiously in the discharge of his duties in administering the Contract.

87. The contracting officer's motivations and actions constitute bad faith or a clear abuse of discretion.

88. Plaintiff is entitled to an award of damages, including lost profits, as a result of Defendant's cardinal change to the Contract in an amount to be determined. This amount includes but is not limited to: compensation for work performed by Plaintiffs but never paid for by Defendant; the amount Plaintiffs were entitled to recover from the sale of merchantable timber and salvage from the Black Butte portion of the Contract, less expenses, but were prevented from receiving due to Defendant's breach of the Contract; the expense of shut-down and moving of their equipment to and from the job site due to Defendant's suspension of the Contract; losses resulting from the forced sale of equipment due to Defendant's Contract breach; Plaintiffs' lost business opportunity due to their inability to bid on other contracts or to perform other work after relying on Defendant's issuance of the Purchase Order and grant of the Contract to Plaintiffs, and a reasonable profit on these amounts; other business expenses or losses related to Defendant's breach.

**ALTERNATIVE FOURTH CLAIM FOR RELIEF**
**(Breach of Contract – cardinal change – elimination of Black Butte portion of the Contract in its entirety)**

89. Plaintiffs reallege and incorporate by reference the allegations of the foregoing paragraphs in their entirety.

90. Defendant modified the Contract by eliminating the Black Butte portion of the Contract in its entirety.

91. Defendant's modification was a "Cardinal Change" of the Contract.

92. Defendant's cardinal change was not readdressible under the Contract, and thus renders the government in breach of the contract.

93. Defendant's contracting officer, Dale Reckley, failed to act conscientiously in the discharge of his duties in administering the Contract.

94. The contracting officer's motivations and actions constitute bad faith or a clear abuse of discretion.

95. Plaintiff is entitled to an award of damages, including lost profits, as a result of Defendant's cardinal change to the Contract in an amount to be determined. This amount includes but is not limited to: compensation for work performed by Plaintiffs but never paid for by Defendant; the amount Plaintiffs were entitled to recover from the sale of merchantable timber and salvage from the Black Butte portion of the Contract, less expenses, but were prevented from receiving due to Defendant's breach of the Contract; the expense of shut-down and moving of their equipment to and from the job site due to Defendant's suspension of the Contract; losses resulting from the forced sale of equipment due to Defendant's Contract breach; Plaintiffs' lost business opportunity due to their inability to bid on other contracts or to perform other work after relying on Defendant's issuance of the Purchase Order and grant of the Contract to Plaintiffs, and a reasonable profit on these amounts; other business expenses or losses related to Defendant's breach.

ALTERNATIVE FIFTH CLAIM FOR RELIEF
**(Breach of Contract – cardinal change – hand piling)**

96. Plaintiffs reallege and incorporate by reference the allegations of the foregoing paragraphs in their entirety.

97. Defendant modified the Contract by requiring Plaintiffs to hand-pile material on the Black Butte portion of the Contract, which material was provided in the Contract to be piled by an excavator.

98. Defendant's modification was a "Cardinal Change" of the Contract terms so drastic that it effectively altered the work required of Plaintiffs in that it required them to perform work materially different from that bargained for.

99. The Defendant's cardinal change was not readressible under the contract, and thus renders the government in breach of the Contract.

100. The contracting officer's motivations and actions constitute bad faith or a clear abuse of discretion.

101. Defendant's contracting officer, Dale Reckley, failed to act conscientiously in the discharge of his duties in administering the Contract.

102. Plaintiff is entitled to an award of damages, including lost profits, as a result of Defendant's cardinal change to the Contract in an amount to be determined. This amount includes but is not limited to: compensation for work performed by

Plaintiffs but never paid for by Defendant; the amount Plaintiffs were entitled to recover from the sale of merchantable timber and salvage from the Black Butte portion of the Contract, less expenses, but were prevented from receiving due to Defendant's breach of the Contract; the expense of shut-down and moving of their equipment to and from the job site due to Defendant's suspension of the Contract; losses resulting from the forced sale of equipment due to Defendant's Contract breach; Plaintiffs' lost business opportunity due to their inability to bid on other contracts or to perform other work after relying on Defendant's issuance of the Purchase Order and grant of the Contract to Plaintiffs, and a reasonable profit on these amounts; other business expenses or losses related to Defendant's breach.

**ALTERNATIVE SIXTH CLAIM FOR RELIEF**
**(Settlement costs based upon a termination of the Contract for the convenience of the Government.)**

103. Plaintiffs reallege and incorporate by reference the allegations of the foregoing paragraphs in their entirety.

104. The term for completion of the contract should have been tolled during the duration of Judge Molloy's injunction.

105. Plaintiff requested an extension of time to perform under the contract due to the uncertainty and delay which resulted from Defendant's issuance of the Contract in violation of Judge Molloy's injunction.

106. The Defendant refused to allow Plaintiff a reasonable extension of time to perform under the Contract.

107. Defendant's contracting officer, Dale Reckley, failed to act conscientiously in the discharge of his duties in administering the Contract.

108. The contracting officer's motivations and actions constitute bad faith or a clear abuse of discretion.

109. If the Defendant's termination of the Contract was not a cardinal change resulting in the Government's breach of the Contract, then the Contract was terminated for the convenience of the Government.

110. Defendant's departure from termination procedures provided by the procurement regulations constitutes a breach of the Contract.

111. The contracting officer has made a unilateral decision with regard to Plaintiff's compensation under the terminated Contract.

112. Plaintiffs are entitled to appeal the contracting officer's decision and to receive the reasonable value of their services plus a reasonable profit.

113. Plaintiffs have been injured by Defendant's termination of the Contract.

114. The parties have been unable to settle their dispute through negotiation.

115. Plaintiffs are entitled to compensation for the Government's termination of the Contract in an amount to be determined.

ALTERNATIVE SEVENTH CLAIM FOR RELIEF
**(Failure to grant equitable adjustment for Contract change - elimination of entitlement to timber and salvage rights)**

116. Plaintiffs reallege and incorporate by reference the allegations of the foregoing paragraphs in their entirety.

117. Defendant's elimination of Plaintiffs' entitlement to timber and salvage material from the Black Butte portion of the Contract constitutes either a directed change or a constructive change to the Contract.

118. Defendant's change to the Contract caused a decrease in the compensation for the work performed under the Contract.

119. Defendant had a duty to make an equitable adjustment in the Contract price, the time for completion, or both, and to modify the Contract to reflect such adjustment accordingly.

120. Defendant failed to make an equitable adjustment in the either the Contract price or the time for completion.

121. Defendant's contracting officer, Dale Reckley, failed to act conscientiously in the discharge of his duties in administering the Contract.

122. The contracting officer's motivations and actions constitute bad faith or a clear abuse of discretion.

123. Plaintiffs were entitled to an equitable adjustment in the Contract price to reflect the Government's elimination of Plaintiffs' entitlement to timber and salvage

materials on the Black Butte portion of the Contract.

124. Plaintiffs are entitled to their damages resulting from Defendant's failure to make the necessary and required equitable adjustment to the Contract, in an amount to be determined.

ALTERNATIVE EIGHTH CLAIM FOR RELIEF
**(Failure to grant equitable adjustment for Contract change - hand-piling)**

125. Plaintiffs reallege and incorporate by reference the allegations of the foregoing paragraphs in their entirety.

126. Defendant's directive to Plaintiffs, through its agent and contracting officer Reckley, to hand-pile salvage material on the Black Butte portion of the Contract, which was provided in the Contract to be piled by an excavator, constitutes either a directed change or a constructive change to the Contract.

127. Defendant's change to the Contract caused a substantial and material increase in the cost of performance and an increase in the time required for performance of the work under the Contract.

128. Defendant had a duty to make an equitable adjustment in the Contract price, the time for completion, or both, and to modify the Contract to reflect such adjustment accordingly.

129. Defendant failed to make an equitable adjustment in the either the Contract price or the time for completion.

130. Defendant's contracting officer, Dale Reckley, failed to act conscientiously in the discharge of his duties in administering the Contract.

131. The contracting officer's motivations and actions constitute bad faith or a clear abuse of discretion.

132. Plaintiffs were entitled to an equitable adjustment in the Contract price and/or an extension of the time for completion of the Contract to compensate for the increased cost and time required to hand-pile instead of excavator-pile material.

133. Plaintiffs are now entitled to their economic damages resulting from Defendant's failure to make the required equitable adjustment.

**ALTERNATIVE NINTH CLAIM FOR RELIEF**
**(Failure to make an equitable adjustment for work suspension caused by the Government)**

134. Plaintiffs reallege and incorporate by reference the allegations of the foregoing paragraphs in their entirety.

135. The contracting officer suspended the Contract on the grounds that the Contract was in violation of Judge Molloy's injunction on logging in the Kootenai National Forest. That suspension was a government-caused delay.

136. The Defendant, through an act or failure of its contracting officer to act, in the administration of the Contract, suspended, delayed or interrupted Plaintiff's performance under the Contract for an unreasonable time.

137. Defendant's suspension of Plaintiffs' performance of the Contract was unreasonable.

138. Plaintiffs were on standby during the suspension and was unable to take on other work during the suspension period, causing Plaintiffs economic damage.

139. The Defendant's unreasonable delay, suspension, or disruption of the Contract necessarily caused Plaintiffs an increase in the cost of the performance of the Contract.

140. Plaintiffs are entitled to damages for their added expenses and damages arising out of the Government's suspension.

141. Defendant had a duty to adjust the Contract and to modify the Contract accordingly, for the increase in the cost of performance necessarily caused by the unreasonable delay, suspension, or disruption.

142. Defendant failed to make an adjustment to the Contract for the increase in the cost of performance to Plaintiffs necessarily caused by the Defendant's unreasonable delay, suspension, or disruption.

143. Plaintiffs were entitled to an upward adjustment of the Contract price which would have enabled them to complete the Contract in its entirety.

144. Plaintiffs are now entitled to their economic damages as a result of the Government's suspension, in an amount to be determined.

WHEREFORE, Plaintiffs certify that these claims are made in good faith, that the supporting data are accurate and complete to the best of their knowledge and belief, that the amounts requested accurately reflects the contract adjustment for which the contractor believes the government is liable, and that the certifier is duly authorized to certify the claim on behalf of the contractor.

Plaintiffs therefore respectfully request the Court to enter its Order and Judgment in Plaintiffs' favor as follows:

A. Finding that the Government and its contracting officer's motivations and actions constitute bad faith or a clear abuse of discretion;

B. Finding that Defendant's contracting officer, Dale Reckley, failed to act conscientiously or in a clear abuse of discretion in the discharge of his duties in administering the Contract;

C. Reversing the contracting officer's July 26, 2004, Notice of Termination;

D. Reversing the contracting officer's finding that the Plaintiffs were in default on the Contract;

E. Reversing the contracting officer's September 24, 2004, Final Decision on Salvage Value;

F. Finding that the Contract was illegal from its inception, and that Plaintiffs are entitled to recover under either the express contract, or under an implied-in-fact contract;

G. In the alternative, finding that the Contracting Officer's actions with respect to modification of and/or termination of the Contract constituted a cardinal change and a breach of contract;

H. Determining Plaintiffs' entitlement to compensation for the value of the timber and salvage material to which Plaintiffs were entitled under the Contract;

I. Determining Plaintiffs' entitlement to compensation for completed work under the Contract;

J. Determining Plaintiffs' entitlement to compensation for the work which Plaintiffs had contracted to complete, but were prevented from completing, under the Contract;

K. In the alternative, finding that the Plaintiffs are entitled to compensation for the contracting officer's termination of the contract for the convenience of the Government;

L. In the alternative, finding that the Plaintiffs are entitled to compensation for the contracting officer's failure to grant an equitable adjustment to the Contract price;

M. In the alternative, finding that the Plaintiffs are entitled to compensation for the contracting officer's failure to allow for a reasonable extension of time for completion of the Contract;

N. Awarding Plaintiffs their damages, including, but not limited to lost profits, incurred as a result of the Government's breach;

O. Awarding Plaintiffs their costs and attorneys' fees incurred in connection with this claim;

P. Awarding Plaintiffs interest on their claims through the date of payment of their claims;

Q. Any other relief the Court may find proper under the circumstances.

Respectfully submitted this 3rd day of October, 2005.

/s/ Quentin M. Rhoades
Sullivan, Tabaracci & Rhoades, P.C.
1821 South Ave. W.- 3rd Floor
Missoula, Montana 59801
406.721.9700 phone
406.721.5838 facsimile

G:\WPUNIX\Clients\B\Basford, Roxanne & Hubert - 5520-00100\Pleadings\Amended Complaint 091205.wpd