Case 1:05-cv-00781-LMB Document 10-5 Filed 10/06/2005 Page 1 of 23

United States Department of Agriculture
Forest Service
Kootenai N.F.
1101 U.S. Highway 2 West
Libby, MT 59923

**File Code:** 6310

**Date:** 13 Oct 2003

**Subject:** Request for Quotations, Request No. 14-03-085
Rexford Ranger District Fuel Reduction Thinning

**To:** Bear Mt. Contracting
PO Box 150
Laclede ID 83841

Your quote of $33,025.00 in response to the subject Request for Quotations is accepted.

Enclosed is Purchase Order No. 43-03J1-4-0008. The order is an offer by the Government to you to buy the services described therein upon specified terms and conditions. Please review the order and its attachments. If you accept the Government's offer, please sign, date and return the acceptance copy of the Purchase Order to Dale Reckley.

Also enclosed is a copy of the Contracting Officer's Representative (COR) designation. Please contact Sheila Braun at the Rexford Ranger District, (406) 296-7164 to establish a date for the Prework Meeting.

**WORK SHALL NOT BE STARTED UNTIL YOU RECEIVE AN OFFICIAL WRITTEN NOTICE TO PROCEED.**

Jeanne M Robertson
JEANNE M. ROBERTSON
Contracting Officer

Enclosures

cc: COR S. Braun, D1
B&F
Contract File

EXHIBIT
tabbies
C

| PAGE | CONTRACT NUMBER | ORDER DATE | ORDER NUMBER | SUB |
|---|---|---|---|---|
| 1 OF 1 | | 14-OCT-2003 | 43-03J1-4-0008 | |

| TYPE PURCHASE | VENDOR IDENTIFICATION NUMBER | FORM 1099 | TAXPAYER'S IDENT. NO. |
|---|---|---|---|
| PURCHASE ORDER | | Y | 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 |

TO:
BEAR MT CONTRACTING
PO BOX 1554

NEWPORT WA 99156

SHIP TO

CONSIGNEE
Kootenai NF, Rexford Ranger District

1299 Highway 93 North

Eureka MT 59917
PHONE: 406-296-2536 EXT:
FAX: EXT:

| LINE ITEM | ACT CODE | DESCRIPTION | QUANTITY | UNIT ISSUE | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|---|
| | | **VENDOR NOTES:** Rexford Ranger District Fuel Reduction Thinning | | | | |
| 01 | | 1 Black Butte - Selective tree thinning, removal of merchantable material, slashing, slash piling in unit | 1.000 | LS | $22,050.0000 | $22,050.00 |
| 02 | | 2 Othorp Lake - Selective tree thinning, slashing, slash piling in unit, hand piling on steep slopes | 1.000 | LS | $10,975.0000 | $10,975.00 |
| | | Offer Acceptance: By signing in the space indicated below, the contractor agrees to perform the work stated in this purchase order in accordance with the attached terms and conditions, and specifications of Request for Quotations 14-03-085. | | | | |
| | | ______ Signature ______ Date | | | | |

SELLER'S ORIGINAL

THIS PURCHASE ORDER NEGOTIATED PURSUANT TO AUTHORITY OF 41 U.S.C. 252(C) ( )

| FOB POINT | DISCOUNT AND/OR NET PAYMENT TERMS | | | | TOTAL | $33,025.00 |
|---|---|---|---|---|---|---|
| | DAYS | DAYS | DAYS | NET | | |
| DESTINATION | | | | 30 | | |
| REQUIRED DELIVERY DATE | SHIP VIA | | | | | |
| 31-JUL-2004 | | | | | | |

DO NOT SHIP ORDER TO THIS ADDRESS (Ship to Consignee Address Above)

BILLING INSTRUCTIONS:
No Billing Will Be Submitted In Advance Of Shipment.
Furnish Invoice With Our ORDER NUMBER: **43-03J1-4-0008**
and your VENDOR IDENTIFICATION NUMBER:
VID **539402071 A** to:

PHONE: EXT:
FAX: EXT:

FAILURE TO SHOW OUR PURCHASE ORDER NUMBER (**43-03J1-4-0008**) AND YOUR VENDOR IDENTIFICATION NUMBER (VID **539402071 A** ) WILL DELAY PAYMENT.

FREIGHT CHARGE OVER $100 REQUIRES BILL OF LADING.

IF AVAILABLE, INCLUDE YOUR TAXPAYER IDENTIFICATION NUMBER ON EACH INVOICE.

**ISSUING OFFICE**
Kootenai National Forest
1101 US Hwy 2 West

Libby MT 59923
PHONE: 406-293-6211 EXT:
FAX: 406-283-7712 EXT:

ORDERED BY ( NAME AND TITLE)
Jeanne M. Robertson
Contracting Officer
PHONE: 406-293-6211 EXT: 7618
FAX: 406-283-7712 EXT:
AUTHORIZED SIGNATURE Jeanne M Robertson

PRINTED BY OPS$JVOTAPKA

United States Department of Agriculture
Forest Service
Kootenai N.F.
1101 U.S. Highway 2 West
Libby, MT 59923

**File Code:** 6310

**Date:** 3 Mar 2004

**Subject:** Contract 43-03J1-4-0008
Rexford Ranger District Fuels Reduction Thinning

**To:** Bear Mountain Contracting
P.O. Box 1554
Newport WA 99156

In accordance with Federal Acquisition Regulation clause 52.242-14, Suspension of Work (Apr 1984), you are hereby directed to suspend all work on subject contract. You will be notified in writing when work is to procede.

for Dale R. Deckley
JEANNE M. ROBERTSON
Contracting Officer

cc: Contract Folder
COR, S. Braun

EXHIBIT
tabbies
D

United States Department of Agriculture
Forest Service
Kootenai N.F.
1101 U.S. Highway 2 West
Libby, MT 59923

File Code: 6310

Date: 6 Mar 2004

Subject: Contract 43-03J1-4-0008
Rexford Ranger District Fuels Reduction Thinning

To: Bear Mountain Contracting
P.O. Box 1554
Newport WA 99156

The Government must make changes to the specifications of subject contract regarding Line Item 1, Black Butte. The changes are as follows:

1. No timber may be removed from the Black Butte area of the contract. All downed timber shall remain where it is located. Timber already moved to the landing area shall not be hauled away.
2. The 44 acres that have already been slashed shall be piled.
3. The contractor shall submit in writing a new price for Line Item 1, Black Butte. The total price should include separate Sub-Item prices for hand piling and excavator piling existing slash.

No changes are made to Line Item 2, Orthrop Lake. Work may continue as specified in the original specifications for this area.

This letter supercedes previous Work Suspension letter dated 3 Mar 2004.

Questions should be addressed to Dale Reckley at 406-283-7644.

for Dale R. Reckley
JEANNE M. ROBERTSON
Contracting Officer

cc: Contract Folder
COR, S. Braun

EXHIBIT
tabbies
E

United States Department of Agriculture
Forest Service
Kootenai N.F.
1101 U.S. Highway 2 West
Libby, MT 59923

File Code: 6310

Date: 6 Apr 2004

Subject: Contract 43-03J1-4-0008, Modification 001
Rexford Ranger District Fuel Reduction Thinning

To: Bear Mt. Contracting
PO Box 1554
Newport WA 99156-1554

Per our discussions at the meeting of April 6, 2004, I've enclosed a modification that terminates Item 1, Black Butte, of subject contract. Please sign, date, and return the original to the undersigned.

Work shall continue on Item 2, Othorp Lake, per the original contract specifications.

I will also be processing an invoice for $4,400.00 to cover the work performed to date at the Black Butte site and look forward to reviewing your information regarding the value of the salvage material at this site.

Dale R. Reckley

DALE R. RECKLEY
Contracting Officer

Enclosures

cc: COR S. Braun, D1
Contract File

EXHIBIT
F

United States Department of Agriculture
Forest Service
Kootenai N.F.
1101 U.S. Highway 2 West
Libby, MT 59923

File Code: 6320

Date: 6 May 2004

Subject: Contract 43-03J1-4-0008
Rexford R.D. Fuel Reduction Thinning

To: Bear Mountain Contracting
P.O. Box 1554
Newport WA 99156

This letter is in response to numerous letters received from you regarding various issues associated with subject contract. I'll try to address each of your concerns.

First, let me say that the Kootenai National Forest values the relationship we have with all of our contractors. They (you) are key to accomplishing the work that needs to be done to keep our Forest healthy and vibrant. My contracting staff and I are dedicated to making sure that our contractors are treated fairly while at the same time complying with the federal contracting laws, regulations, and court orders. Before your contract was awarded, Judge Molloy's injunction prohibited the cutting and removal of green merchantable timber. We made a mistake by including larger trees (greater than 7" dbh) and pulp in your salvage rights. Judge Molloy's injunction does not prohibit you from completing your contract to slash and pile the remaining acreage in both areas as set forth in the original contract. With the required changes, the contract is still in place and you are obliged to comply with its terms and conditions. I encourage you to contact the Contracting Officer and establish a schedule that will allow you to complete the work by the contract end date of 31 July 2004. If you do not make satisfactory progress toward that completion date the Contracting Officer will have no choice but to terminate your contract for default. I don't want that to happen.

Second, I have directed Mr. Reckley to work with you to establish fair compensation for the value of the salvage material at Black Butte. In order to do that you must provide some substantiation of the value as you see it. Substantiation can be in the form of logical estimates based on commonly accepted forestry estimating practices or copies of contracts for the purchase of salvage material. Mr. Reckley cannot accept just your assertion of the value without some written back up or rationale. Please provide the Contracting Officer with whatever data you have available that will provide a basis for negotiating a reasonable settlement.

Finally, I am pleased to tell you that the partial payment of $4,400 has been processed and should be deposited electronically in your account on 19 May 2004.

Sincerely,

Bob Castaneda

BOB CASTANEDA
Forest Supervisor

EXHIBIT
tabbies
G

United States Department of Agriculture
Forest Service
Region One
Northern Region
200 East Broadway
Missoula, MT 59802

File Code: 6320
Date: MAY 06 2004

Bear Mountain Contracting
Attn: Hubert Basford
P.O. Box 1554
Newport, WA 99150-1554

Dear Mr. Basford:

This is in response to your letter of April 16, 2004 regarding Contract No. 43-03J1-4-0008 for the Rexford Ranger District Fuels Reduction Thinning project on the Kootenai National Forest. As you indicated, the work on this project was suspended for a short time to determine whether the injunction imposed by Judge Malloy applied to the work associated with your contract. It was the opinion of our legal counsel that the injunction did apply and that no timber could be removed from the Black Butte unit.

Contractors are critical to the completion of our work, and it is important to us that you are compensated fairly for the work that you have performed. It is my understanding that the Forest has calculated the estimated market value of the downed timber based on cruised volume, and Contracting Officer Dale Reckley has agreed to make payment to you in that amount as compensation for your efforts. If you have documentation that supports a different amount, please contact Mr. Reckley to discuss this.

It is imperative that we comply with the injunction; and, it is my understanding that much of the work can still be completed with some modifications to the specifications. The Forest is willing to negotiate these changes with you so that you can continue working and meet our obligations under the injunction.

I encourage you to work with the Contracting Officer Reckley to come to a successful resolution.

Sincerely,

Kathleen A. McAllister

for ABIGAIL R. KIMBELL
Regional Forester

cc: Dale R Reckley

EXHIBIT
tabbies
H



Printed on Recycled Paper

United States Department of Agriculture | Forest Service | Kootenai N.F. | 1101 U.S. Highway 2 W. Libby, MT 59923

File Code: 6310

Date: June 8, 2004

Subject: Contract No. 43-03J1-3-0008
Fuel Reduction

To: **Bear Mountain Contracting**

As a current contractor with the U.S. Forest Service, this letter is to inform you of a requirement to provide information regarding work you have completed, but not yet invoiced. This information is required to ensure that our financial statements are accurate.

Therefore, in accordance with the Prompt Payment and Payments clauses in your contract, please fill in the information requested at the bottom of this letter and return the letter to me by June 23, 2004.

We appreciate your compliance with this request, and value your continued business relationship. If you have any questions, or need additional information, please call me at (406) 283-7644.

Dale R Recklley
Contracting Officer

cc: Contract File
B&F

Please complete the following information and return to me in the envelope provided.

"Under contract number 43-03J1-3-0008 , as of the end of June 2004, I anticipate incurring the following estimated value of work for the project: $71,874.00.

Of this amount, $71,874.00 has been invoiced, and $71,874.00 has not been invoiced."

[signature] 6/29/04

Dale R. Recklley
Signature

6/8/04
Date

EXHIBIT
I

Faxed - 6/28/04

United States Department of Agriculture | Forest Service | Kootenai N.F. | 1101 U.S. Highway 2 West Libby, MT 59923

File Code: 6320 Date: 26 Jul 2004

Subject: **Notice of Termination**

To: Bear Mountain Contracting
P.O. Box 1554
Newport WA 99156

In accordance with Federal Acquisition Regulation (FAR) clause 52.249-8, Default (Fixed-Price Supply and Service) (APR 1984), contract number 43-03J1-4-0008, dated 14 Oct 2003 is hereby terminated in its entirety. Despite direction from the Contracting Officer to continue work, Bear Mountain Contracting has not performed work under this contract since early March 2004 and so has failed to make progress as to endanger performance. The Forest service estimates that approximately six weeks worth of work remains. The remaining fuels reduction work cannot be completed by the contract end date of 31 Jul 2004. You also failed to respond with a plan to correct your inadequate performance after receiving the "Cure Notice" on 2 Jul 2004. Therefore, your right to proceed under this contract is terminated.

The terminated services may be purchased against your account. You will be held liable for any excess costs associated with reprocurement of the services required to be performed in accordance with this contract. The Government reserves all rights and remedies provided by law or under the contract, in addition to charging excess costs.

This notice constitutes the Contracting Officer's final decision that Bear Mountain Contracting is in default as specified and that your failure to perform is not excusable. This decision may be appealed to the Board of Contract Appeals, U.S. Department of Agriculture, Room 219, South Building, Washington, DC 20250-0600. If you decide to make such an appeal, you must furnish written notice thereof to the Board of Contract Appeals within 90 days of the date that you receive this decision. A copy thereof shall be furnished to the Contracting Officer, Kootenai National Forest, 1101 Highway 2 West, Libby, MT 59923, from whose decision the appeal was taken. Your notice shall indicate that an appeal is intended, should reference this decision, and identify the contract by number.

With regard to appeals to the agency board of contract appeals, you may, solely at your election, proceed under the board's small claim procedure for claims of $50,000 or less or its accelerated procedure for claims of $100,000 or less. Instead of appealing to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims within 12 months of the date you receive this decision

It is the Forest Service's goal to negotiate a reasonable settlement for the value of the salvage on the Black Butte portion of this contract. If you wish to participate in this negotiation process you must submit a written settlement proposal to the undersigned by 20 Aug 2004. Your proposal must contain sufficient detail, rationale, and substantiation to allow the Contracting Officer to determine how your proposed timber volumes and prices were established. If you choose not to submit a settlement proposal, the Contracting Officer will issue a final decision based solely on the Forest Service's calculations of the salvage value. You have the burden of establishing, by proof satisfactory to the Contracting Officer, that the proposed amount is accurate and correct.

Dale R. Reckley
DALE R. RECKLEY
Contracting Officer
406-293-6211
cc: Contract Folder
COR
B&F
SBA

EXHIBIT
J



Printed on Recycled Paper

Copy Sent To Client

United States Department of Agriculture
Forest Service
Kootenai N.F.
1101 U.S. Highway 2 West
Libby, MT 59923

File Code: 6320

Date: 30 Aug 2004

Subject: Contract 43-03J1-4-0008
Rexford RD Fuel Reduction Thinning
Reinstatement of Contract

To: Bear Mountain Contracting
c/o Sullivan, Tabaracci & Rhoades
Attn: Andrew W. Pierce

Federal Acquisition Regulation subpart 49.401(e) states: "...the contracting officer may, with the written consent of the contractor, reinstate the terminated contract by amending the notice of termination...".

The USDA Forest Service is offering to reinstate subject contract under the original terms and conditions. Bear Mountain Contracting must agree to complete all work to include handpiling of slash where machine piling is not possible due to steep or rocky terrain. This was a requirement of the original contract and it will remain in effect in the reinstated contract. There is no advantage to the Government in reinstating the contract if Bear Mountain Contracting is going to refuse to meet their contractual obligation again.

As always the Kootenai National Forest is willing to work with you as unforseen problems arise in the administration of this contract. We will not, however, agree to accept less then we contracted for.

If you would like to reinstate the contract, please submit your written consent to me by close of business on 31 Aug 2004.

Dale R. Reckley

DALE R. RECKLEY
Contracting Officer

cc: Contract Folder
COR

EXHIBIT
tabbies
K



(1)

Printed on Recycled Paper

**SULLIVAN**
**TABARACCI**
**& RHOADES**
A Professional Corporation
*Attorneys at Law*

Zane K. Sullivan
John K. Tabaracci
Quentin M. Rhoades
D. Scott Manning
* Darrel L. Moss
‡ Sarah J. Rhoades
Carolynn M. Fagan
♯ Chris A. Johnson
Angela Zielinski
♮ Andrew Pierce

*Also licensed in Colorado
‡Registered in US Patent & Trademark Office
♯ Also licensed in Washington
♮ Also licensed in Wyoming

August 31, 2004

Dale Reckley
Contracting Officer
U.S. Department of Agriculture
Forest Service
1101 U.S. Highway 2 West
Libby, MT 59923

***Re: Bear Mountain Contracting Settlement Proposal***

Dear Mr. Reckley:

We write today in reference to your Notice of Termination dated July 26, 2004 to Bear Mountain Contracting of Newport, Washington, ("Bear Mountain") regarding the Orthorp Lake / Black Butte Fuels Reduction and Thinning Contract ("the Contract"). Your Notice indicates the USDA Forest Service's ("USFS") goal is to negotiate a reasonable settlement for the value of the salvage on the Black Butte portion of the Contract ("Black Butte"). The Notice also indicates that if Bear Mountain wishes to participate in this negotiation process, it must submit a written settlement proposal to you.

Initially, the deadline for this proposal was August 20, 2004. You then agreed upon our request to an extension for this proposal until August 31, 2004. We do note that your deadline for a settlement proposal appears contrary to the terms of USFS Contract with Bear Mountain. The inserted Contract Clause 52.233-1, Disputes (d)(1), provides that a Contractor may make a claim within 6 years after accrual of the claim. Bear Mountain reserves its rights under that and all other provisions of the Contract and under applicable law.



EXHIBIT
L

This letter shall serve as Bear Mountain's written settlement proposal regarding payment for the completed work on the Black Butte portion of the Contract. As you will recall, the background leading up to this negotiation is as follows:

- On June 27, 2003, Federal District Judge Donald Molloy issued his Order enjoining USFS from "further timber sales only pending the resolution of these matters on remand."

- On October 13, 2003, USFS issued the contract at issue to the Basfords / Bear Mountain Contracting covering the Orthorp Lake, Bear Mountain areas within the Pinkman drainage.

- On March 3, 2004, after Basfords had begun to perform under the contract, USFS suspended the Basford's work with no explanation.

- On March 6, 2004, USFS superceded the Work Suspension letter of March 3, 2004, and directed Bear Mountain Contracting to continue work with significant changes to the Black Butte portion of the Contract.

- On April 6, 2004, you directed Bear Mountain to continue work on Orthorp Lake portion of the Contract.

- On May 6, 2004, USFS admits making a "mistake" in including larger trees (greater than 7" dbh) and pulp in the salvage rights portion of the Black Butte Contract. USFS contends the Contract remains in place with extensive changes to the work required of Bear Mountain, but refuses to make a corresponding increase in the price of the Contract. These changes by USFS result in the Contract becoming unprofitable to Bear Mountain.

- On May 18, 2004, USFS denies Bear Mountain's request for additional time to complete the Contract on the grounds that 1) it has refused to do any work since early March, despite CO requests, and 2) there remains sufficient time to complete all work by the original contract date of July 31, 2004.

- On July 26, 2004, USFS terminates the Contract in its entirety citing Bear Mountain's "failure to perform" on the Contract since March, 2004. The Notice of Termination makes no reference to USFS's unilateral change of material conditions of the Contract.

- On August 20, 2004, Judge Molloy lifts the injunction on the Kootenai National Forest, including the Pinkman drainage.

USFS has offered to pay Bear Mountain the amount of $781.08 for the work they have completed on the Black Butte portion of the Contract. According to USFS, on March 26, 2004, Justin Burkey and Mark Rebella estimated the volume of timber cut and not removed on Item 1 (Black Butte portion) of the Orthorp Lake Fuel Reduction Thinning project. The Forest made three estimations of volume: 1) merchantable timber felled, bucked, skidded and in deck; 2) merchantable timber felled but not skidded; 3) merchantable timber not cut but intended to be cut by the Basfords around Ponderosa Pine greater than 14" DBH. USFS used delivered log prices to get a predicted high bid of $85.05/ccf. It then "backed out" felling and bucking charges of $21.78/ccf according to its appraisal program, bringing the value to $63.27/ccf. It estimated total market value of the 12.44 ccf at $787.08.

Bear Mountain disputes this calculation. Bear Mountain contends USFS's appraisal of the existing deck of logs is based on prices which would be obtained as a high bid if this Contract were sold to the highest bidder in a timber sale, and not the more appropriate price the service contractor would receive at a mill. Bear Mountain contends the price at the mill would be $400.00 MBF, not USFS predicted high bid of $85.05ccf. Bear Mountain had contracts in place with the mills to verify this figure.

Bear Mountain also disputes USFS's "backing out" of felling and bucking charges of $21.78. Bear Mountain believes this amount would only apply to a timber sale and not to this "salvage" contract. It also contends USFS's deduction of 13% for defect is improper because a defect deduction is only properly applied to a timber sale and not to a salvage contract which includes all merchantable timber "down to the boughs."

Bear Mountain has retained Forestry and Natural Resources Consultant, Dan Pittman, CF/ACF, of Forest Resources of Montana & Associates, LLC to assist it in presenting this settlement offer. Mr. Pittman has reviewed USFS's and Bear Mountain's positions in this matter. It is his opinion that the USFS should compensate Bear Mountain for the delivered log prices for both sawlogs and pulp, rather than the "high bid" prices with deductions for "felling and bucking" and for "defect" as proposed by USFS.

Mr. Pittman's calculations apply to the three distinct portions of the Black Butte portion of the Contract also addressed by USFS: 1) merchantable timber felled, bucked, skidded and in deck; 2) merchantable timber felled but not skidded; 3) merchantable timber not cut but intended to be cut by the Basfords. Based on Mr. Pittman's calculations, the compensation to Bear Mountain for the item 1) above is as follows:

///

**Sawlogs (felled, bucked, skidded and in deck):**

4.33 MBF (estimated volume in log deck, as determined by USFS)
x $ 400.00 (delivered log price, per contract with Owens & Hurst Lumber Co.)
**$ 1,732.00 value of sawlogs in deck**

**Pulp Logs (for same area as Sawlogs felled, bucked, skidded and in deck):**

USFS estimate of area completed for the merchantable timber felled, bucked, skidded and in deck = 2-3 Acres (**Note: 2.5 acres** used for calculations).

**2.5** completed acres = ½ load of pulp (1 load pulp per 5 acres)
= **12 Tons pulp** (1 Load of pulp weighs 24 Tons/ Self-Loader)
x $ 30.00 per Ton (contract with Old Town Log Yard)
**$ 360.00 value of pulp on 2.5 completed acres**

**SubTotal $2,092.00**

**Merchantable timber, felled but not skidded**:

By USFS calculations, Bear Mountain felled, but did not skid, merchantable timber on 44 acres. Bear Mountain was paid $4,400.00 for the felling portion of this work. The value of the merchantable material on the 44 acres may be calculated based on the formulas applied to the 2.5 completed acres.

**Sawlogs felled but not skidded:**

2.165 MBF/acre (4.33 MBF estimated volume in log deck for 2 acres)
x 44 acres
95.260 MBF
x $400.00 delivered log price
**$38,104.00 value of merchantable saw logs (delivered price) on 44 acres**

Pulp Logs on 44 acres (1 load per 5 acres) = 8.8 loads
24 Tons per self-loader x 8.8 loads = 211.20 Tons Pulp
x $30.00 per Ton Pulp delivered price by contract
= **$6,336.00 value of pulp logs on 44 acres, delivered price**

A copy of Mr. Pittman's opinion letter, including his calculations, is attached for your review.

To negotiate the settlement of this Contract, Bear Mountain has been forced to incur additional costs in the form of attorney fees and consultant fees, in the amount of $5,300.00. Those costs will necessarily increase the longer this matter remains unresolved. USFS's Contract with Bear Mountain provides for such fees to be paid to the contractor in this situation. "If the CO and Contractor fail to agree on the whole amount of costs to be paid because of the termination of work, the CO shall determine, on the basis of information available, the amount, if any, due the Contractor, and shall pay the amount, determined as follows: . . . The reasonable costs of settlement of the work terminated, including– (i) Accounting, legal, clerical, and other expenses reasonably necessary for the preparation of termination settlement proposals and supporting data." (52.249-11 (g)(3)(i) Termination of Work (Consolidated Facilities or Facilities Acquisition)).

The total amount requested by Bear Mountain for completed work and value of merchantable materials to which they would have been entitled on the Black Butte portion of the Contract, plus reasonable associated costs reasonably necessary for the preparation of this termination settlement proposal, is $51,832.00. This, of course, does **not** include amounts to which Bear Mountain would have been entitled had it been permitted to work through completion of the Contract.

Finally, and most important, Bear Mountain contract insists that any amicable resolution must include USFS's rescission of Bear Mountain's default under the contract. The decision by USFS will have a substantial impact on Bear Mountain's economic viability as a company. In order for USFS to settle these claims, and to keep its efforts athwart an injunction of a U.S. District Court from becoming an issue for litigation, the default must be rescinded or otherwise voided. Absent that condition, Bear Mountain will have no choice but to resort to its remedies in court.

Thank you for you kind attention. Please convey this offer to the appropriate USFS decision makers at your earliest convenience. Should we not hear from you to the contrary within ten days, this offer will be automatically revoked without further notice, and we will advise our client to proceed accordingly.

Very truly yours,
SULLIVAN, TABARACCI & RHOADES

Quentin M. Rhoades
QR:ccn
Enclosure: Pittman's report
G:\WPUNIX\Clients\B\Basford, Roxanne & Hubert - 5520-00100\Correspondence\Reckley Settlement ltr.8-31-04 Q.wpd

# Forest Resources of Montana & Associates, LLC

**Dan Pittman, CF/ACF**
*Forestry and Natural Resource Consultant*

August 30, 2004

Mr. Andrew Pierce
Sullivan, Tabaracci & Rhoades, PC
1821 South Avenue West
Missoula, MT 59801

Re: Hubert Basford d.b.a. Bear Mountain Contracting vs. Forest Service

Dear Andrew:

This letter will serve as documentation of my review and research regarding the dispute between Mr. Hubert Basford, d.b.a. Bear Mountain Contracting and the U.S. Forest Service, in regards to the Black Butte/Orthrop Lake Thinning Contract.

I visited with Mr. Basford on the phone yesterday regarding the dispute. To begin with I would like to point out that Mr. Basford is a graduate forester who has previously worked for the Forest Service as a Silviculturlist for ten years before establishing his own business as an independent contractor. He has been an independent contractor for the past 23 years and has completed 107 contracts with the Forest Service in this time. It should also be noted that the definition of Silviculture, as it is defined in The Dictionary of Forestry, is: the art and science of controlling the establishment, growth, composition, health, and quality of forests and woodlands to meet the diverse needs and values of landowners and society on a sustainable basis. It is my opinion Mr. Basford is knowledgeable and highly qualified in the forestry field, capable of implementing silvicultural prescriptions.

In reviewing the file and visiting with Mr. Basford it is my understanding that he signed a Purchase Order (PO) agreement, order number 43-03J1-4-008, which involved two fuel reduction/thinning projects. The first being, Black Butte and the second being Othorp Lake located on the Rexford Ranger District, Kootenai National Forest. The dispute involves the Black Butte portion of the contract where Mr. Basford began his work and was immediately stopped and eventually defaulted by the Forest Service. It appears that Mr. Basford was to selectively thin trees, remove merchantable material, slash the non-commercial material and pile it for the Forest Service to burn at a later date. The general scope of the contract calls for opening the overstory canopy through tree thinning as stated in the Silvicultural Prescription. It also allows the contractor salvage rights for a wide variety of products including but not limited to boughs, small Christmas trees, round wood (pulp) and as Mr. Basford has pointed out sawlog size material according to the prescription. It is this issue that is in dispute and is of some confusion as described in the contract. The Prescribed Treatment calls for "Commercial

2 Twilight Drive • Clancy, Montana 59634 • Office (406) 443-1702 • Fax (406) 449-5147

Thinning" and is stated that he is to: "reduce stocking by thinning from below to an average of 60-80 ft2/acre. Vigor of the larger Ponderosa pine (PP) is to be maintained or improved by reducing competition for light, water and crown spacer. To achieve this objective use the following specifications:

- Harvest/slash all stems in unit less than 8" Diameter @ Breast Height (DBH)
- Leave all PP and Western Larch (WL) 14" DBH and larger
    - For a radius of 20 feet (outside bark) from each 14" DBH + PP or WL, harvest all stems except 14" DBH+ PP and WL.
    - In areas where leaving the trees above would not result in at least 70 trees/acre, leave the larger most vigorous trees up to 70 trees/acre, giving WL and PP a priority over Douglas fir (DF), but giving size and vigor criteria a higher precedence than species preference.
- Leave 2-4 sound snags over 10" DBH where available
- Leave all other stems over 8" DBH

Mr. Basford contends that the Forests Service directed him to space those trees greater than 14" DBH to 25 x 25 foot spacing. It should be noted that this spacing results in leaving 70 trees/acre, the number of trees required to be left in the above mention prescription.

The dispute evolves when Mr. Basford begins to fell, buck, and deck trees at a central landing. He falls trees on 44 acres and skids approximately 2-3 acres of sawlog size trees into a deck. This volume of which is 4.33 MBF or 9.98 CCF as estimated by the Forest Service. Mr. Basford has agreed with those numbers. It was at this point that Mr. Basford says the Forest Service tried to modify the contract in regards to the value of the work completed. Mr. Basford does not agree with these calculations

The Forest Service calculations of value are as follows:

A. In calculating the value of Basford's completed work, the Forest Service has applied the "high bid" amount of $85.05/CCF, minus "felling and bucking" charges of $21.78/CCF, lowering the value to $63.27/CCF.
B. The Forest Service also deducted 13% from the value of these sawlogs for "defect". They estimated total market value of the 12.44 CCF in the deck at $787.08.
C. The Forest Service never gave Basford's any credit for other "merchantable material" or "round wood"/pulp.
D. The Forest Service never gave Basford's any credit for the work he did on the remaining 44 acres, trees that were cut but not skidded to the deck.

Mr. Basford's calculations of value for the contract was based on slashing non-commercial material, piling it and his profit margin was to come from the commercial thinning value based on the local mill delivered log price, plus all other merchantable material.

A. Basford's agree with the Forest Service estimate that 2-3 acres had been cut and skidded to the landing area and put in the deck.
B. Basford's agree with the total volume in the deck, but disagree with how the Forest Service calculated the value of this work.

C. Basford's had a contract with Owens & Hurst Lumber Co. for $400/MBF for delivered sawlogs.
D. Basford's had a contract with Old Town Log Yard for $30.00 per ton for delivered pulp or $180/MBF (Hubert says one load of pulp per 5 acres).
E. Basford's DO NOT agree with a deduction for felling and bucking.
F. Basford's DO NOT agree with a 13% deduction for defect.
G. Mr. Basford wants to be paid for the delivered price of the logs, plus all the other merchantable material, down to the boughs, including pulp, without backing out of felling and bucking charges, without calculation for defect, and plus work slashing and felling done on the remaining 44 acres, but not skidded to the landing.

In my opinion the Forest Service failed to write a silvicultral prescription with supporting contractual clauses that clarified the removal of sawlog size material in the commercial thinning portion of the contract. Instead of being paid the $63.27/CCF proposed by the Forest Service for the sawlogs cut and decked, Mr. Basford should be paid the deliver log prices for both sawlogs and pulp on the entire contract. I am estimating the values to be:

- **Sawlogs $84,864** = $400 delivered log price x 212.17 MBF
  212.17 MBF = 98 acres x 2.165 MBF/acre
  2.165 MBF/acre = 4.33MBF (estimated volume in log deck) divided by 2 acres

- **Pulp Logs $14,400** = $30/Ton delivered price x 480 Tons
  480 Tons = 24 Tons/self loader x 20 loads
  20 loads = 98 acres divide by 1 load pulp/5 acres

**- TOTAL AMOUNT DUE = $99,264.00**

The Forest Service tried to modify the contract by telling Mr. Basford that he was not to cut any trees lager than 7" DBH and hand pile the slash instead of using an excavator. In my opinion this dramatically changes the scope of the contract and basis for which Mr. Basford calculated his bid price. Mr. Basford was suspended by the Forest Service with no explanation and eventually defaulted on the contract. Mr. Basford was never given a change order on the contract nor did he sign a modified contract.

It should also be noted that the Forest Service issued Mr. Basford this contract on October 13, 2003 but previously on June 27, 2003 Federal Judge Donald Molloy had issued an Order enjoining the Forest Service from "further timber sales only pending the resolution of these matters on remand."

If you have any question, please feel free to give me a call.

Sincerely,

Dan Pittman, CF/ACF

United States Department of Agriculture | Forest Service | Kootenai N.F. | 1101 U.S. Highway 2 West Libby, MT 59923

**File Code:** 6320 **Date:** 9 Sep 2004

**Subject:** Contract 43-03J1-4-0008
Rexford RD Fuel Reduction Thinning

Copy Sent To Client 9/9/'04

**To:** Bear Mountain Contracting
c/o Sullivan, Tabaracci & Rhoades
Attn: Andrew W. Pierce

I write this letter in response to your settlement proposal of 31 Aug 2004. As I compared your proposed timber volumes and prices to those of the Forest Service, it became clear to me that there is no way to negotiate our way across the gap that separates us. It's just too big. I would like to propose two possible alternatives.

**Alternative One: Reinstatement of the original contract.**

I continue to believe that this is a win-win alternative and the one the Forest Service would like to see implemented. If the Basfords believe, as they claim, that the 98 acres on Black Butte truly has close to $100,000 worth of sawlogs and pulp, then they stand to make over $124,000 for 6 weeks of work. The price of timber has increased approximately 30% in the last year so anything they thought they could make one year ago when they submitted their original quote, should have increased correspondingly.

We also believe that the likelihood of another injunction that would shutdown the operation is very small. Even if the Ecology Center appeals the judge's ruling, the chances that it would be effective before the work could be completed is, again, very small. Keep in mind that the injunction had nothing to do with the Othorp Lake portion of the contract. If the Basfords started immediately on Black Butte, they should be finished within a month and then could move to Othorp Lake which is at a lower elevation and more amenable to winter work.

If the Basfords consider this a viable alternative, they need to respond to me with a written consent to reinstate the original contract. Because of the impending end of the Government fiscal year, the written response must be received by 13 Sep 2004. Facsimile copies are acceptable.

**Alternative Two: Convert the settlement proposal to a claim under the Disputes Clause of the contract.**

This alternative allows the process to be streamlined and ultimately drawn to conclusion more quickly. The process as it stands now is:

1. the Contracting Officer makes a final decision on the settlement proposal.
2. the Basfords submit a claim if they take exception to the settlement proposal decision,

EXHIBIT
tabbles
M

3. the CO issues a final decision regarding the claim and then,
4. if the Basfords disagree with the CO's decision on the claim, they may file an appeal.

This is a lengthy process and could be shortened by converting the settlement proposal to a claim and eliminating steps 1 and 2. If the Basfords choose this alternative, they must request, in writing, that the settlement proposal be converted to a claim and handled as such.

I encourage you to seriously consider Alternative One as the best possible solution on many levels. I look forward to your timely response.

Dale R. Reckley

DALE R. RECKLEY
Contracting Officer

cc: Contract Folder
COR

United States Department of Agriculture | Forest Service | Kootenai N.F. | 1101 U.S. Highway 2 West Libby, MT 59923

**File Code:** 6320 **Date:** September 24, 2004

**Subject:** **Final Decision on Salvage Value**
Contract No. 43-03J1-4-0008

**To:** Bear Mountain Contracting
P.O. Box 1554
Newport WA 99156

**Background**

On October 14, 2003, Bear Mountain Contracting was awarded a firm fixed price contract No. 43-03J1-4-0008, for fuels reduction, thinning, slashing, and piling on the Rexford Ranger District of the Kootenai National Forest. The work areas under this contract were located at Othorp Lake and Black Butte. The contract completion date was July 31, 2004.

A temporary Suspend Work Order was issued on March 3, 2004 on the Black Butte portion of this contract pending assessment by the General Counsel on whether removal of sawlogs was in compliance with District Judge Molloy's injunction against timber sales in the Pinkham area of the Kootenai NF, which included Black Butte. Othorp Lake was not located in an area under question. At the time of the Suspend Work Order, Bear Mountain Contracting had slashed 44 acres of the 98 acres on Black Butte.

On March 6, 2004, the Contracting Officer (CO) notified Bear Mountain Contracting that the contract had been modified to reduce the scope of work at Black Butte. The CO rescinded the Suspend Work Order.

On April 6, 2004, the CO, the Contracting Officer's Representative (COR), Sheila Braun, and Bear Mountain Contracting met at the Supervisor's Office in Libby, Montana to discuss the value of the salvage on Black Butte affected by the reduction in scope. Mr. Basford (Bear Mountain Contracting) did not agree with the Forest Service data and value estimates, but did not provide information to counter the estimates. When Bear Mountain Contracting finally provided their estimate of salvage value, they did not provide requested substantiation or rationale for this value to the CO.

In a letter to the CO, dated June 29, 2004, Bear Mountain Contracting claimed the monies due them for the loss of timber product was $71,874.00. Bear Mountain did not provide any substantiation for this total. On August 31, 2004, the CO received a letter from Bear Mountain, through their lawyer, claiming $46,532.00. Once again, no substantiation of the claim in the form of sales contracts with local mills or timber cruise data was provided.

**Discussion**

The entire contract was terminated for default on July 20, 2004. Even though work was not completed on either of the two areas under contract, only Line Item 1, Black Butte, is in dispute. Bear Mountain Contracting claims they should be compensated for the value of the pulp and sawlogs on 44 of 98 acres





| | |
|---|---|
| Logging cost (skidding, loading, hauling 170 miles) | $13,972.00 |
| Value at $30/ton | 6,690.00 |
| Total value of pulp | $ -7,282.00 |

EXHIBIT N

**Conclusion**

Bear Mountain Contracting based their volume estimates on guesswork and invalid assumptions of timber uniformity and distribution of trees. The Forest Service cruised the entire 44 acres and has data to support all of its estimates. Bear Mountain produced no substantiation of their estimates of pulp and sawlog values beyond assertions that they had contracts to purchase the timber products at mills. The Forest Service used standard estimating models supported by university studies and regional appraisal systems. Bear Mountain contracting failed to include the costs of hauling the pulp 170 miles to a mill in Idaho. The Forest Service accounted for this large aspect of cost and came to a vastly different conclusion on the value of pulp.

that they slashed on Black Butte. The Forest Service does not dispute that they are entitled to fair compensation; the only disagreement is how much is fair. The crux of the disagreement centers on the methods used to estimate the volume and value of pulp and saw timber. Bear Mountain asserts it is entitled to delivered log prices without a deduction for logging and haul costs. The Forest Service counters that predicted high bid is a better meassure of value.

**Volume of Sawlogs**

Bear Mountain used the values from the 2-3 acres from which the sawlogs were skidded (2.5 used for ease of estimating) and applied those numbers to the remaining 41.5 acres, "calculating" a volume of 99.59 MBF. This method of estimating assumes a uniform distribution of timber across the entire 44 acres. This assumption is completely erroneous and has the effect of negating their entire argument of volume and thus, value.

The Forest Service established volume estimates by cruising the standing timber on the entire 44 acres. The cruise yielded a volume estimate of 23 MBF and breaks down as follows:

16.9 MBF from cruise + 4.7 MBF in deck + 1.4 MBF felled, not skidded = 23 MBF total on 44 acres

**Volume of Pulp**

Bear Mountain Contracting claims 1 load of pulp per 5 acres for a total of 223.2 tons. This is based solely on Mr. Basford's experience and guess. Again, the estimates are based on invalid assumptions of uniformity and consistency not found on the Black Butte project site. The Forest Service did not cruise the pulp but in the opinion of the Forest Service employees that walked the entire 44 acres, Bear Mountain's claims were not accurate. The Forest Service employees, based on their observations of inconsistent log lengths and the haphazard manner in which the "pulp" was felled on the 2-3 acres, felt that it would be impossible to remove it in an economically viable manner.

**Value of Sawlogs**

Bear Mountain contends that they should be paid delivered log price for sawlogs in accordance with the contract they had with Owens & Hurst Lumber Co. Despite repeated requests, Bear Mountain has refused to provide a copy of the log purchase contract so I have been unable to verify their claim of a signed delivery contract. They claim the sawlogs are valued at $39,836 based on a $400 delivered log price and 99.59 MBF. They also take exception to a reduction for felling and bucking.

The Forest Service used predicted high bid as a more accurate estimate of the value of the timber. Predicted high bid is a composite figure that takes multiple factors into account and reflects an overall value of the timber at time of sale based on prevailing market conditions. The predicted high bid at the time Mr. Basford would have signed his contracts to purchase sawlogs was $169.39/MBF. To account for the fact that he was already required, and being paid, under the terms of the service contract to fell and buck the logs for slashing and piling, the Forest Service reduced the predicted high bid by $46.40/MBF (calculated from residual value & logging cost). Thus the calculated value of the sawlogs is:

Predicted high bid $169.39/MBF - $46.40 (felling/bucking) = $122.99 x 23 MBF = $2,828.77

salvage. Bear Mountain twice declined the offer for reasons unknown.)

Bear Mountain Contracting's assertions of timber values are not supported. Given the lack of any type of significant substantiation provided by Bear Mountain for this claim, I am basing my final decision on Forest Service data. This data supports a value of $2,828.77 for sawlogs on the 44 acres and in the log deck. These monies will be held in account pending determination of excess costs associated with reprocurement of services. The Government reserves all rights and remedies provided by law or under the contract, in addition to charging excess costs.

This is the final decision of the Contracting Officer. This decision may be appealed to the Board of Contract Appeals, U.S. Department of Agriculture, Room 219, South Building, Washington, DC 20250-0600. If you decide to make such an appeal, you must furnish written notice thereof to the Board of Contract Appeals within 90 days of the date that you receive this decision. A copy thereof shall be furnished to the Contracting Officer, Kootenai National Forest, 1101 Highway 2 West, Libby, MT 59923, from whose decision the appeal was taken. Your notice shall indicate that an appeal is intended, should reference this decision, and identify the contract by number. In lieu of appealing to the Board of Contract Appeals, you may bring an action directly in the United States Court of Federal Claims, 717 Madison Place NW, Room 103, Washington, DC 20005, within 12 months of the date that you receive this decision.

If you appeal to the Board of Contract Appeals, you may proceed under the Board's small claim procedure for claims of $50,000 or less or its accelerated procedure for claims of $100,000 or less.

Dale R. Reckley
DALE R. RECKLEY
Contracting Officer

cc: Contract Folder
COR
SBA