IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| Hubert Basford,<br>Roxanne Basford and<br>Bear Mountain Contracting<br>Plaintiffs,<br><br>v.<br><br>The United States,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 05-781C<br>(Judge Baskir) |

JOINT PRELIMINARY STATUS REPORT

Pursuant to Rule 16 and Appendix A, Rules of the United States Court of Federal Claims ("RCFC"), counsel for plaintiffs and defendant submit the following joint preliminary status report in response to questions set forth in Appendix A.

a. Does the Court have jurisdiction over the action?

Plaintiff states that the Court has jurisdiction to hear and decide the action.

Defendant states that it does not appear that Hubert Basford and Roxanne Basford, in their individual capacities, are proper plaintiffs in this case, as the contract at issue was entered into between the defendant, United States, and plaintiff "Bear Mountain Contracting." Additionally, although plaintiffs' complaint does not include a demand for sum certain, it

appears that plaintiffs' assert entitlement to an amount in excess of $100,000. Additionally, it appears that plaintiffs never submitted a certified claim to the contracting officer. If correct, it would appear that this Court lacks jurisdiction to consider the complaint of plaintiff "Bear Mountain Contracting."

b. Should the case be consolidated with any other case?

No.

c. Should trial of liability and damages be bifurcated?

No, in the event a trial is necessary, it should not be bifurcated.

d. Should further proceedings in this case be deferred pending consideration of another case before this Court or any other tribunal?

No.

e. Will a remand or suspension be sought?

No.

f. Will additional parties be joined?

No.

g. Does either party intend to file a motion pursuant to Rule 12(b), 12 (c), or 56?

The parties are receptive to the possibility of filing dispositive motions, pursuant to RCFC 56, and plan to make a decision whether to file such motions prior to or following the close of discovery. In addition, defendant contemplates filing a motion to dismiss, pursuant to RCFC 12(6), once it determines whether such a motion is appropriate.

h. What are the relevant factual and legal issues?

The parties state, respectively, that the relevant factual and legal issues are as follows:

(1). Plaintiffs:

**PLAINTIFFS' FACTUAL SUMMARY**

On June 27, 2003, U.S. District Judge Donald Molloy issued an injunction on all logging on the Kootenai National Forest (the "Injunction"). On August 19, 2003, the U.S. Forest Service ("Forest Service") entered into a fuels reduction and thinning contract (the "Contract") with Plaintiffs Hubert Basford, Roxanne Basford and Bear Mountain Contracting ("Bear Mountain") for $33,025.00. Bear Mountain and its owners have a nearly 30-year history of successful and positive completion of forestry related contracts with the Forest Service. At the time of the execution of the

Contract, Bear Mountain was unaware of the Injunction. The Forest Service was fully aware of the Injunction and its prohibitions on logging in the Kootenai National Forest.

The Contract contained two project areas, Othorp Lake and Black Butte, both located within the Kootenai National Forest. The work requirements under the Black Butte portion of the Contract for "removal of merchantable material", "commercial thinning", "harvesting", "selective tree thinning", "slashing" and "slash piling" constituted logging activity. The Black Butte portion of the Contract granted Bear Mountain the right to salvage and sell the merchantable timber and pulp resulting from this logging activity. Bear Mountain would derive the majority of its compensation under the Contract by selling an estimated $125,000.00 in merchantable timber and salvage material obtained by performing the terms of the Black Butte portion of the Contract.

After Bear Mountain had purchased a rubber-tired skidder specifically for this Contract, and had begun performance and completed approximately 45% of its work under the Contract, sources outside the Forest Service, believed to be related to the Injunction litigation, objected to Bear Mountain's logging activity pursuant to the Contract.

The Forest Service admitted it must comply with the Injunction, and that it had violated the Injunction in issuing Plaintiffs' Contract. The Forest Service unilaterally suspended the Contract, then modified the Contract by revoking Bear Mountain's right to proceed with logging activity on the Black Butte portion of the Contract. The modifications eliminated Bear Mountain's compensation for its months of already-performed logging work on approximately 44 acres of the Black Butte area by prohibiting Bear Mountain from removing and selling the downed timber and salvage material. The modifications materially *increased* Bear Mountain's work requirement under the Contract and materially *decreased* Bear Mountain's total compensation under the Contract.

Plaintiffs requested payment for the Forest Service's modifications and for their damages related to the Forest Service's issuance of the Contract in violation of the Injunction. Instead of fairly compensating Bear Mountain for the modifications, the Forest Service Contracting Officer ("C.O.") terminated the Black Butte portion of the Contract in its entirety, eliminating not only Bear Mountain's compensation for previously-completed work on the Contract, but also its entitlement to perform additional logging work and to sell merchantable timber and salvage on the

entirety of the Black Butte portion of the Contract, which comprised the distinct majority of Bear Mountain's compensation under the Contract. The modifications materially changed the amount and character of Bear Mountain's work requirements and materially decreased its total compensation.

Plaintiffs requested payment for the Forest Service's new round of modifications. Although the Forest Service specifically directed its C.O. to work with Bear Mountain to fairly compensate them for its Contract modifications, the C.O. refused to do so. Instead, he directed Bear Mountain to continue work on the remaining portion of the Contract without adjustment to its compensation. Bear Mountain explained that the uncompensated Contract modifications made the Contract performance inequitable and economically infeasible, but requested a three-month extension to perform the Contract as requested. The C.O. denied Bear Mountain's request for an extension and defaulted Bear Mountain on the Contract, as modified, in its entirety.

After the default, Judge Molloy lifted his injunction on logging in the Kootenai National Forest.

The C.O., without addressing his pending request for Bear Mountain's Settlement Proposal on the value of its Black Butte salvage claim, offered to reinstate Bear Mountain's Contract, "under the original terms and conditions" so long as they do so *by the next day*.

Unable to accept the C.O.'s offer to reinstate the Contract by the next day, Bear Mountain submitted its Settlement Proposal. Bear Mountain requested the Forest Service rescind its default on the Contract, pay Bear Mountain for its completed work and pay it for the value of the merchantable timber and salvage under the completed portion of the original Contract plus its reasonable costs to prepare the proposal.

Bear Mountain supported its Settlement Proposal with "logical estimates based on commonly accepted forestry estimating practices" and "copies of contracts for the purchase of salvage material". After receiving Bear Mountain's Settlement Proposal, the C.O. did not request additional documentation supporting the proposal. The C.O. refused to negotiate the terms of Bear Mountain's Settlement Proposal.

Contradicting his earlier claim that Bear Mountain would only be allowed to reinstate the Contract if it did so within one day, the C.O. again offered to reinstate the original Contract. The offer, however, specifically

confirmed Bear Mountain's concern that the Contract could again be "shut down" if the parties to the Injunction appealed Judge Molloy's ruling lifting the Injunction. Rather than proposing alternative settlement terms, the C.O.'s offer suggested Bear Mountain convert its Settlement Proposal to a claim under the Contract's disputes clause.

Approximately two weeks after his response to Bear Mountain's Settlement Proposal, the C.O. issued his Final Decision on Salvage Value, Contract No. 43-03J1-4-008 finding that Bear Mountain was entitled to $2,828.77, to be held in an account pending determination of excess costs associated with reprocurement of services.

The C.O.'s default of Bear Mountain on the Contract caused Bear Mountain 's inability to obtain other Forest Service contracts and has caused it additional and ongoing economic damage.

## PLAINTIFFS' LEGAL ISSUES

### CONTRACT ISSUANCE

1. Whether the Contract solicited logging activity within the Kootenai National Forest in violation of the Injunction, making the Contract illegal from its inception, and entitling Bear Mountain to recover its damages.

**CONTRACT SUSPENSION**

2. Whether the C.O.'s suspension of the Contract was a government-caused delay, and whether that suspension was unreasonable.

3. Whether Bear Mountain was on standby during the suspension and was unable to take on other work during the suspension period, causing them economic damage which they are entitled to recover.

4. Whether the Forest Service breached its duty to adjust the Contract and to modify the Contract accordingly, for the increase in the cost of performance necessarily caused by the unreasonable delay, suspension, or disruption, which upward adjustment of the Contract price which would have enabled Bear Mountain to complete the Contract in its entirety.

5. Whether Bear Mountain is now entitled to its economic damages as a result of the Forest Service's suspension of the Contract.

**CONTRACT MODIFICATION / BREACH**

6. Whether the C.O.'s requirement that Bear Mountain hand-pile material which the Contract provided was to be excavator piled was a modification of the Contract.

7. Whether the Forest Service's termination of Bear Mountain's salvage rights under the Contract was a modification to the Contract.

8. Whether the C.O.'s elimination of the Black Butte portion of the Contract in its entirety was a modification of the Contract.

9. Whether the C.O.'s termination of the Contract was a modification of the Contract.

10. Whether the Forest Service's contract modifications materially changed the amount and character of Bear Mountain's work and materially decreased its compensation under the Contract.

11. Whether the any of the C.O.'s contract modifications constitute a cardinal change of the Contract, whether the cardinal change was redressible under the Contract, and whether the cardinal change renders the Forest Service in breach of the Contract.

12. Whether the C.O.'s motivations and actions constitute bad faith or a clear abuse of discretion.

13. Whether the C.O. failed to act conscientiously in the discharge of his duties in administering the Contract.

14. Whether Bear Mountain is entitled to damages as a result of the Forest Service's cardinal change to the Contract.

**CONTRACT MODIFICATION / EQUITABLE ADJUSTMENT**

15. Whether the Forest Service's directive to Bear Mountain to hand-pile salvage material which was provided in the Contract to be piled by an excavator, constitutes either a directed change or a constructive change to the Contract.

16. Whether the Forest Service's elimination of Bear Mountain's entitlement to timber and salvage material from the Black Butte portion of the Contract constitutes either a directed change or a constructive change to the Contract.

17. Whether Bear Mountain was entitled to an equitable adjustment in the Contract price and/or an extension of the time for completion of the Contract to compensate for the increased cost and time required to hand-pile instead of excavator-pile material or to reflect the Forest Service's elimination of Bear Mountain's entitlement to timber and salvage materials on the Black Butte portion of the Contract.

18. Whether the Forest Service's change to the Contract caused a substantial and material increase in either the cost of performance, the time required for performance of the work under the Contract, or a

substantial decrease in compensation for work to be performed under the Contract.

19. Whether Forest Service had a duty to make an equitable adjustment in the Contract price, the time for completion, or both, and to modify the Contract to reflect such adjustment accordingly.

20. Whether the Forest Service failed to make an equitable adjustment in the either the Contract price or the time for completion.

21. Whether Bear Mountain is entitled to its damages resulting from the Forest Service's failure to make the necessary and required equitable adjustment to the Contract.

**CONTRACT TERMINATION**

22. Whether Bear Mountain's time to complete the Contract should have been tolled while the Injunction was in effect.

23. Whether the C.O. refused to allow Bear Mountain a reasonable extension of time to perform under the Contract.

24. Whether, in terminating the Contract, the C.O. departed from contract termination procedures provided by applicable procurement regulations thereby constituting a breach of the Contract.

25. If the Forest Service's termination of the Contract was not a cardinal change resulting in its breach of the Contract, whether the Contract was terminated for the convenience of the government.

## PLAINTIFFS' CLAIMS

(Pursuant to Special Procedures's Order ¶ 4 (rev. Jun 1, 2005).)

I. Relief from Illegal Contract

The Contract was illegal from its inception and Bear Mountain is entitled to recover under either the express contract or an implied-in-fact contract.

II. Breach of Contract

The Forest Service's modifications were cardinal changes which rendered it in breach. The Forest Service's termination and/or default of the Contract constitutes a breach.

III. Settlement Costs Based upon a Termination of the Contract for the Convenience of the Government

If the Forest Service's Contract termination was not a cardinal change resulting in its breach, then the Contract was terminated for the convenience of the Government entitling Bear Mountain to compensation.

## IV. Failure to Grant Equitable Adjustment for Contract Changes

The Forest Service's elimination of Bear Mountain's entitlement to timber and salvage material from the Black Butte portion of the Contract constitutes either a directed change or a constructive change which decreased its compensation under the Contract.

The C.O.'s directive to Bear Mountain to hand-pile salvage material which the Contract specified was to be excavator-piled constitutes either a directed change or a constructive change to the Contract causing a substantial and material increase in the cost of performance and an increase in the time required for performance of the work under the Contract.

The Forest Service breached its duty to make an equitable adjustment in the Contract price, the time for completion, or both, and to modify the Contract to reflect such adjustment accordingly.

## V. Failure to Make an Equitable Adjustment for Work Suspension Caused by the Government

The C.O. suspended the Contract because it violated the Injunction, which suspension was a government-caused delay. The Forest Service through an act or failure of its C.O. to act, in the administration of the

Contract, unreasonably suspended, delayed or interrupted Bear Mountain's performance and breached its duty to adjust the Contract and to modify the Contract accordingly.

(2). Defendant:

**DEFENDANT'S FACTUAL SUMMARY**

Without conducting a site visit before bidding upon the solicitation, Bear Mountain Contracting ("Bear Mountain") entered into a contract with the U.S. Forest Service ("Forest Service") for "fuels" reduction, requiring the cutting and piling of excess trees and brush in two specific areas in the Kootenai National Forest in northwestern Montana. The two areas of work were called "Black Butte" and "Othorp Lake." The contract was awarded on October 14, 2003, and the Forest Service agreed to pay a total of price of $32,025 for work in both areas. The contract permitted Bear Mountain Contracting to remove some of the excess trees and brush from the site as "salvage."

Bear Mountain commenced work in late October 2003 and worked only sporadically through the fall and winter. By early 2004, Bear Mountain Contracting was apparently experiencing considerable difficulty in completing the contract, including the fact that Bear Mountain rolled one of

its pieces of equipment on the steep slopes. On March 2, 2004, Bear Mountain Contracting expressed to the Forest Service inspector that it was dissatisfied with the contract. Coincidentally, the next day, March 3, 2004, the contracting officer was contacted by the District Ranger for the Kootenai National Forest, who was concerned that permitting Bear Mountain to remove certain-sized logs from the Black Butte area may violate an injunction, issued by Judge Molloy of the United States District Court of Montana, covering logging in certain parts of the forest. On the same date, the Forest Service issued to Bear Mountain a suspension of work order for all work on the contract.

Three days later, on March 6, 2004, the Forest Service revoked the suspension of work and directed that work could resume in the Black Butte area, except that no additional cutting of logs was permitted, that trees already cut would be piled, and that no logs could be removed from the site, and that work in the Othorp Lake area could resume unchanged. On March 13, 2004, Bear Mountain responded that in light of the Forest Service's letter of March 6, Bear Mountain considered the contract no longer valid. Up to this point, the Forest Service had paid Bear Mountain,

in accordance with the parties' agreement, the full amount of progress payments due for the thinning and piling work done to date.

A period of protracted negotiations between the parties ensued. During these negotiations, the Forest Service obtained the express agreement from Judge Molloy that the logs cut by Bear Mountain Contracting could be removed from the site without violating the injunction. Additionally, the contracting officer repeatedly exhorted Bear Mountain Contracting to return to the site and complete the contract work. The negotiations ultimately were unsuccessful. Bear Mountain never returned to work at either site and did not complete the contract work at either the Black Butte or Othorp Lake sites.

On June 24, 2004, the contracting officer issued a cure notice to complete the contract work to which Bear Mountain did not respond and, on July 26, 2004, the contracting officer terminated the contract for default. Following the termination, the contracting officer offered to reinstate the contract without changes, but Bear Mountain Contracting refused. Subsequently, the contracting officer entered into a contract with a different company, Brenneman's Excavation, to complete the piling of the fuels cut, but left unpiled, by Bear Mountain at both the Black Butte and Othorp Lake

work areas. The price of the follow-on contract, on a per acre basis, was approximately twice the amount for which Bear Mountain was obligated to perform.

## DEFENDANT'S LEGAL ISSUES

1. Was Bear Mountain properly terminated for default?

2. Did Bear Mountain abandon the contract work or otherwise fail to provide adequate assurances of its performance, such that Bear Mountain repudiated the contract?

3. If the termination for default was not proper, or if Bear Mountain did not repudiate the contract, what termination for convenience recovery, if any, is Bear Mountain entitled to receive?

Additionally, defendant counsel notes that there are two additional issues that could be raised. First, defendant's counsel has determined that defendant has a valid claim against Bear Mountain Contracting for the excess reprocurement costs associated with the follow-on contractor that completed the work left undone by Bear Mountain Contracting. In the event that the parties are unable to settle this case, defendant intends to move to amend its answer to assert a counterclaim for those excess costs. Second, defendant's counsel is investigating whether a properly certified

claim was required and, if so, was such a certified claim submitted to the contracting officer. If a certification is required and was not submitted, defendant would move to dismiss for lack of jurisdiction.

I. What is the likelihood of settlement? Is alternative dispute resolution contemplated?

Counsel for the parties have discussed settlement and agree that this is an appropriate case to employ alternative dispute resolution procedures to increase the chances of achieving a settlement. Accordingly, the parties' counsel intend to shortly contact the assigned ADR judge to discuss preferred processes and scheduling. Additionally, the parties have attempted to build into the proposed discovery schedule sufficient “float” time to conduct an ADR process.

j. Do the parties anticipate proceeding to trial? Does any party, or do the parties jointly, request expedited trial scheduling?

The parties anticipate proceeding to trial, should settlement negotiations be unsuccessful and should discovery reveal that dispositive motions are inappropriate. The parties do not request expedited trial scheduling.

k. Are there special issues regarding electronic case management needs?

No.

I. Is there any other information of which the Court should be aware at this time?

No.

Proposed Discovery Plan

The parties propose to conduct discovery simultaneously in accordance with the following schedule.

1. Exchange of initial disclosures pursuant to Rule 26 – January 27, 2006;

2. Exchange of document productions – February 24, 2006;

3. Completion of fact witness depositions – May 26, 2006;

4. Production of expert witness reports – June 16, 2006;

5. Completion of expert witness depositions – July 28, 2006;

6. The parties agree they will submit a proposed timetable for the course of future proceedings, in accordance with RCFC Appendix G, within 30 days of the close of discovery.

Respectfully submitted,

ROBERT D. McCALLUM, JR.
Assistant Attorney General

s/ David M. Cohen
DAVID M. COHEN
Director

s/Bryant G. Snee
BRYANT G. SNEE
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L Street
Washington, D.C. 20530
Tele: (202) 616-0315

Attorneys for Defendant

Of Counsel:
JENNIFER NEWBOLD
Office of General Counsel
United States Department
of Agriculture
Missoula, Montana

s/Quentin M. Rhoades
Quentin M. Rhoades
Sullivan, Tabaracci & Rhoades, P.C.
1821 South Ave. W.- 3rd Floor
Missoula, Montana 59801
(406) 721-9100 telephone
(406) 721-5838 facsimile

Attorneys for Plaintiffs

January 17, 2006